GERTRUDE E. BARSTOW, et als., *vs.* ELLEN J. TETLOW, Aplt.

From Decree of Judge of Probate.

Kennebec.    Opinion June 6, 1916.

*Admissibility of self-serving statements. Declaration of donor after gift. Gifts causa mortis. Gifts inter vivos.*

1. Where a joint deposit was made in Rhode Island and the transactions connected therewith occurred there, the law of that State governs in the determination of the appellant's claim of title to the fund as the surviving joint tenant of the deposit.

2. To constitute a valid gift *inter vivos* it must be absolute, irrevocable and complete, whether the donor die or not, and the subject of it must be delivered to the donee so that the donor parts with all present and future dominion over it.

3. If the intention be that the gift is to take effect only at the death of the donor, it is ineffectual, because that would be an attempted testamentary disposition of property which can be accomplished only by means of a valid will.

4. To establish the gift *inter vivos* claimed by the appellant, the evidence must show that the alleged donor intended in making the survivorship deposit to give the appellant a then absolute and irrevocable joint tenancy and ownership in the deposit, thereby divesting herself of all present and future dominion and control of the interest and right so given, and to deprive herself of the right to dispose of the fund by a last will and testament.

5. Testimony as to statements made by the alleged donor, after the joint survivorship deposit was made, to the effect that the deposit was hers and that she intended to dispose of it by her will, is incompetent and inadmissible upon the issue whether it was her intention in making the deposit to give the appellant a joint tenancy and ownership therein. If made they were self serving statements. A donor cannot defeat his own gift by declarations made after it has taken effect.

6. Where immediately after a joint survivorship deposit is made, the depositor makes a last will and testament containing numerous specific pecuniary bequests, aggregating $3,000, having substantially no property other than the survivorship deposit from which those pecuniary bequests could be paid, those facts and circumstances, not being in controversy, are competent and admissible as evidence, and are entitled to much weight, in the determination of the question whether the survivorship deposit was in

fact made with an intention on the part of the depositor thereby to divest herself of her right to dispose of the fund by a last will and testament.

*Held:*

7.  That the evidence does not justify a conclusion that the alleged donor made the joint survivorship deposit with an intent to give the appellant a then joint tenancy and ownership in the fund, thereby depriving herself of her control of it during her life, and of her right to make a testamentary disposition of it. On the other hand, the evidence shows that the alleged donor made the survivorship deposit with the understanding that while she lived she retained the use and control of it, and had the right to dispose of it by her will.

*Held:*

8.  Also, that the evidence is not sufficient to establish a gift *causa mortis* of the fund from the alleged donor to the appellant.

Appeal from decree of Judge of Probate, County of Kennebec, State of Maine, to the Supreme Court of Probate. At conclusion of testimony, the cause was reported for the determination of the Law Court, and upon so much of the evidence as is legally admissible, the court to render such judgment as the law and evidence require. Decree of court stated in opinion. Appeal not sustained. Decision of court, that the fund in question does not belong to the appellant, but is a part of the estate of Amanda M. Kent, and should be so accounted for. So ordered.

Case stated in opinion.

*Edmund H. Talbot, Howard R. Ives,* and *Leon V. Walker,* for plaintiffs.

*William P. Whitehouse,* and *Edwin J. Tetlow,* for defendant.

SITTING: SAVAGE, C. J., KING, BIRD, HALEY, HANSON, JJ.

KING, J.    February 9, 1909, Amanda M. Kent made a deposit in the Providence Institution for Savings of Providence, Rhode Island in the names of "Amanda M. Kent or Ellen J. Tetlow or the survivor of them." Mrs. Kent died August 27, 1910, testate. Her will was proved and allowed in the probate court for Kennebec County, Maine, and the executrices therein named, Ellen J. Tetlow and Eva R. Crane, were appointed and qualified. At the time of Mrs. Kent's death the amount to the credit of said bank deposit was $6,188.90, which Ellen J. Tetlow thereafter drew out of said bank claiming title thereto. Thereupon, on petition of the appellees

and after hearing, the Judge of probate of said county decreed that the amount of said deposit should be inventoried and accounted for as a part of the estate of Mrs. Kent. From that decree Ellen J. Tetlow appealed, and the case is reported to this court for determination on so much of the evidence as is legally admissible.

The appellant asserts title to the fund in question (1) as the surviving joint tenant and owner of the deposit, claiming that such joint tenancy was created by a gift *inter vivos* from Mrs. Kent to her; and (2) that, if the evidence is not sufficient to establish such a joint tenancy in the deposit by a gift *inter vivos,* there was a gift *causa mortis* of the deposit to her.

The deposit having been made in Rhode Island and the transactions connected therewith having occurred there, the law of that State undoubtedly governs in the determination of the appellant's claim of title to the fund as the surviving joint tenant of the deposit.

It is well established by the dscisions of the court of that State that a bank deposit may be so made that two persons shall be joint owners thereof during their joint lives, and the survivor take upon the death of the other. *Whitehead* v. *Smith,* 19 R. I., 135; *Industrial Trust Co.* v. *Scanlon,* 26 R. I., 228. Where it is claimed that a joint tenancy in a bank deposit is created by a gift *inter vivos,* the gift must be established by sufficient proof as in the case of any other gift. *Trust Co.* v. *Scanlon,* supra. And in the instant case, in order to sustain the appellant's claim of title to the deposit as the surviving joint tenant of it by a gift *inter vivos* the evidence must establish an intention on the part of Mrs. Kent to make such a gift and that she carried out that intention by such acts as were necessary to be done on her part to make it complete and effectual.

In behalf of the appellees it is claimed that the joint survivorship deposit was made by Mrs. Kent with no intention to make a present gift to Mrs. Tetlow of an interest as joint tenant in the deposit or that any title or beneficial interest in the money should pass to Mrs. Tetlow until Mrs. Kent's death; but that the deposit was so made as a matter of convenience in order that Mrs. Tetlow, living in Providence, could draw from the deposit such sums as Mrs. Kent, who lived in Maine, should from time to time require, and also with the intent and belief that, if the deposit was so

made, then, in the event of Mrs. Kent's death before she had made a satisfactory testamentary disposition of her property, any balance of this deposit would pass to Mrs. Tetlow and not go to the heirs at law of Mrs. Kent.

To constitute a valid gift *inter vivos* it must be absolute, irrevocable and complete, whether the donor die or not, and the subject of it must be delivered to the donee so that the donor parts with all present and future dominion over it. *Sessions* v. *Mosley,* 4 Cush., 87, quoted with approval in *Flaherty* v. *O'Connor,* 24 R. I., 587, 590; *Grover* v. *Grover,* 24 Pick., 261; *Dole* v. *Lincoln,* 31 Maine, 422. If the intention be that the gift is to take effect only at the death of the donor it is ineffectual, because that would be an attempted testamentary disposition of property which can be accomplished only by means of a valid will. *Prov. Inst. for Savings* v. *Carpenter,* 18 R. I., 287, citing *Savings Bank* v. *Fogg,* 82 Maine, 538. And to establish the gift claimed by the appellant the evidence must show that Mrs. Kent intended to give Mrs. Tetlow a then absolute and irrevocable joint tenancy and ownership in the deposit, thereby divesting herself of all present and future dominion and control of the interest and right so given, and that she made a delivery of the subject matter of the gift—the joint tenancy in the deposit.

Under a joint survivorship deposit either party has authority so far as the bank is concerned to draw any part or the whole of the deposit on presentation of the deposit book. And in some cases the suggestion has been made that inasmuch as the alleged donor of such a deposit has the power to defeat the gift by drawing the deposit the control of the deposit is thereby retained by the donor and the gift is not absolute. Referring to that argument against the vesting of an interest in joint tenancy in such a deposit, the Rhode Island court in *Industrial Trust Co.* v. *Scanlon,* supra, said: "To this it may be replied that the donee has the same power, if he has possession of the book. Both parties cannot hold the book at the same time, and the mere fact that one has possession of it ought not to be conclusive against the rights of the other."

In the case at bar the deposit book representing the joint survivorship account was handed by Mrs. Kent to Mrs. Tetlow at

the time the deposit was made and thereafter she retained possession of it. We are therefore of the opinion that the evidence in this case is reasonably sufficient under the law of Rhode Island to establish a complete gift *inter vivos* to Mrs. Tetlow of a joint tenancy in the deposit if Mrs. Kent then intended to make such a gift in presenti. And this is the controlling question: Did Mrs. Kent intend by making the joint survivorship deposit to divest herself of the beneficial ownership of the fund during her life and to deprive herself of her right to dispose of it by will?

There is no material conflict of admissible evidence. It consists mainly of the acts and statements of Mrs. Kent at the time the deposit was made, and of her previous and subsequent conduct as tending to disclose her intent in opening the bank account in question. It seems proper to make here some reference to that practically undisputed evidence.

Mrs. Kent and her husband formerly lived in Rhode Island. Their only child, a girl, died at the age of about 6 years. Mrs. Tetlow, the appellant, a niece of Mrs. Kent, lived and had her home with them from the time she was about fifteen years old until her marriage to Mr. Tetlow in 1880, when she settled in Providence. For some years prior to Mr. Kent's death in 1907 the Kents lived in Fayette, Maine, on a farm, and Mrs. Kent's residence there continued until her death. Both Mr. and Mrs. Kent had money on deposit in the Providence Institution for Savings. The relations between the Kents and Mrs. Tetlow were always intimate. They were accustomed to send to her orders on the bank for money which she drew and sent to them. They advised with her about their business affairs. She visited them and they visited her. In short the relations existing between them were like those between parents and daughter. Mr. Kent died testate. He gave the residue of his estate to his wife for her life with full power to use any part or portion of the principal thereof as she desired for her own benefit, or to dispose of it by will, and he further provided that if any of his estate should remain at his wife's death undisposed of by her or her will, it should go to Mrs. Tetlow.

At the time of Mr. Kent's death in 1907 there was no deposit at said bank in his name. There had been a deposit there in his own name, and another survivorship deposit there, in his name or that of his wife or the survivor of them, but both of those deposits were withdrawn in March 1906 and re-deposited in Mrs. Kent's name. June 10, 1906, Mrs. Kent wrote Mrs. Tetlow concerning the making of a joint bank deposit as follows:

"I think for the present I had better adopt what you spoke of as to the use of both names and then either could draw, and when I get ready for a will, or when you come down again, could make a change if necessary. I just want to be safe in case I am taken suddenly. I should feel badly if I could not have the disposition of my property, but strange things happen sometimes. . . . I have read and re-read your letters and think your proposals very good, it is something that has given me much thought and fears that something would happen to me before things were settled. . . . I will send it back, or you make out a request to have the book run to us both and I will copy that and send it back."

In accordance with the suggestions in that letter Mrs. Kent sent to Mrs. Tetlow an order on the bank for $5000, which sum she withdrew, and, because the order did not authorize the bank to open the joint survivorship account, the $5000 was deposited in Mrs. Tetlow's name, and she notified Mrs. Kent of the fact offering to give her a note for the amount until the account could be made as desired. That account remained unchanged, except the addition of dividends, until February 9, 1909, when the joint survivorship account in question was made. It then amounted to $5520.40. Mrs. Tetlow never claimed any beneficial interest in that account. On February 9, 1909, the balance of the other account standing in Mrs. Kent's name was $2563.68.

For some years before her death, Mrs. Kent was afflicted with cancer which finally caused her death. She made short visits to the Tetlows after Mr. Kent's death, and in October, 1908, went to Providence to spend the winter with them.

Mr. Tetlow testified that shortly prior to the opening of the joint survivorship account in question, Mrs. Kent said to him that she wanted to get the conditon of her bank account off her mind, "she

wanted the bank account in this way—that during her life she or Nellie—it should be an account in such shape that she or Nellie could draw it during either of their lives, and at her death it should go to Nellie." In answer to one question on cross examination as to what Mrs. Kent said to him as to why she wanted the deposit to be in joint survivorship, Mr. Tetlow said "So it would be theirs together while they lived and it would be Mrs. Tetlow's at her death, if she died first." If that was Mrs. Kent's exact language it would tend to indicate that she then intended a gift in presenti to Mrs. Tetlow of a joint ownership in the deposit. But it is not to be expected perhaps that any witness can recall after the lapse of some years the exact words used by another in a conversation unless it be the use of some peculiar word or expression. And it is to be noted that Mr. Tetlow in his examination in chief did not use that language in stating what Mrs. Kent said, and that almost immediately following this answer he stated that she said nothing about a gift, and that the money was to be so placed "that either could draw from it during their lives," and "That is all the statement there was."

We find no other evidence of any particular statements made by Mrs. Kent before she went to the bank on February 9, 1909, tending to show her intention in making the joint survivorship deposit. Mrs. Tetlow was asked, "Did she state before you went to the bank, or previous to that, her purpose to make a joint account?" and she answered, "I don't remember she did."

On February 9, 1909, Mrs. Kent and Mr. and Mrs. Tetlow went to the bank together. Mrs. Kent called for Mr. Ormsbee, an official of the bank with whom she was acquainted. Mrs. Tetlow testified that while they were waiting for him Mrs. Kent said to her that "she would like to place what money she had there in a joint account so that either of us could draw from it, or so that it would be mine when she was through with what she needed." She did not hear all of Mrs. Kent's conversation with Mr. Ormsbee. He testified that Mrs. Kent said "that she would like to open a deposit in her name and her niece's, Mrs. Ellen J. Tetlow; that she wanted the money put in so that either could draw it during the lifetime of both, and that on the death of one it would go to the

survivor. I said that was all right. She had had a similar account with her husband, so she understood what it was." The amount of the two accounts, less $100 which Mrs. Kent took in cash, was then deposited in the joint survivorship account—$7,984.08. After issuing the book Mr. Ormsbee read it to Mrs. Kent and told her the money would be payable to either as long as both lived and on the death of either one would go to the other. "She said that was just what she wished to accomplish." On cross examination, Mr. Ormsbee stated that Mrs. Kent said, "She wanted the money to go to Mrs. Tetlow in case of her death, and she wanted it so Mrs. Tetlow could draw the money for convenience's sake. She lived in Maine and Mrs. Tetlow lived here." On re-direct examination he was asked this question, "She stated to you, did she not, that she wanted to have this money put in her name and Nellie's so it would be hers and Nellie's while she lived and Mrs. Tetlow's when she died?" And he answered "Yes sir."

It appears that substantially all the property Mrs. Kent had in 1909, in addition to the deposit in this joint survivorship account, was about $600 in a bank in Maine, except that she had under her husband's will the power of disposal of the residue of his property which consisted apparently of the homestead farm in Fayette with the farming tools and household furniture.

In April, 1909, after the joint survivorship deposit was made, and while Mrs. Kent was in Providence with the Tetlows, she made a will wherein she made 19 specific pecuniary bequests aggregating $3000, devised the homestead farm in Fayette to Mrs. Tetlow, and provided that the residue of her estate should be divided into five parts which she bequeathed to particular persons. Mrs. Tetlow was with Mrs. Kent at the attorney's office when the preparation of this will was discussed and arranged for and when it was executed, and she was perfectly familiar with all of its provisions. She testified that she knew "it all by heart." After Mrs. Kent returned to Fayette in the summer of 1909, she executed another will which was practically a duplicate of the first except that she increased her specific pecuniary bequests $600. Mrs. Tetlow was present when that will was executed and knew its provisions. She was familiar with Mrs. Kent's property affairs

and fully understood that the specific pecuniary bequests in her will could not be paid if the deposit in question was not Mrs. Kent's property and subject to her testamentary disposition of it. It appears that Mrs. Kent informed the attorney who was acting for her in the preparation of this second will that she had made the joint survivorship deposit in question and asked his opinion of the effect of such a deposit, and that he suggested to her that it would be safer in his opinion to have it changed. After that, and before the will was executed, Miss Crane, the co-executrix, who was then visiting Mrs. Kent, wrote Mrs. Tetlow that her aunt "wishes you to have the book made out in her name." Before that letter reached Mrs. Tetlow, however, Miss Crane called on her in Providence and told her that Mrs. Kent wanted the bank book, to which Mrs. Tetlow replied, according to her own testimony, that she should "never give up the bank book until I have an order from Aunt Kent." She then wrote to her aunt asking her if she wanted the bank book, to which Mrs. Kent replied, "I received your letter of the 20th this morning and haste to reply . . . I wish the business was settled, but have no need of the bank book only to have it convenient to draw from. . . . You may think I am awful fussy about the will, and think you will see it in the same light after we talk it over. I don't feel happy as things stand now." Mrs. Tetlow went to Fayette soon after and on July 22, 1909, wrote to Miss Crane that her aunt had completed the will and that she "seems content with one change that you understand. . . ."

In the latter part of 1909, Mrs. Kent went to Providence to the Tetlows and the will was put with other papers in a safe deposit box. In January, 1910, Mr. Tetlow took her to Indianapolis for treatment, where she remained, her condition growing worse, until May, when she was brought back to the Tetlows and died there in August, 1910. Money was drawn from the joint survivorship account by Mrs. Tetlow on orders signed by Mrs. Kent so long as she was able to sign them. As to those orders Mrs. Tetlow testified, "She told me I need not require that, but I preferred to do it, so she would know positively about the money." And during Mrs. Kent's life, Mrs. Tetlow drew no money from the deposit except

for Mrs. Kent's own use, and whatever was drawn was used exclusively for her benefit.

We have not referred to certain testimony in behalf of the appellees tending to show that after the joint survivorship deposit was made Mrs. Kent made certain statements to the effect that the deposit was hers and that she intended to dispose of it by her will. We think the testimony as to such statements was incompetent and inadmissible. If made they were self serving statements. A donor cannot defeat his own gift by declarations made after it has taken effect. *Holmes* v. *Sawtelle,* 53 Maine, 179, 182. *Kimball* v. *Leland,* 110 Mass., 325. And we think the rule against hearsay testimony prevents the admissibility of the testimony as to such declarations, even though, if made, they might tend to show the intention of Mrs. Kent in making the joint survivorship deposit. We have therefore disregarded that testimony as inadmissible. But we entertain no doubt of the competency and admissibility of the fact that Mrs. Kent made two wills subsequent to and soon after the deposit in question was made. The evidence as to what she did in respect to the making of those wills and their provisions is not questioned. Neither is the fact questioned that she did not have other property besides this bank deposit from which any of the numerous specific pecuniary bequests in the wills could be paid. And we think her acts in making those wills are entitled to much weight in the determination of the question whether she made that joint survivorship deposit with an intention thereby to divest herself of her right to dispose of that fund by a last will and testament.

We have omitted reference to many minor facts and circumstances put in evidence, all of which are of more or less significance in the determination of the question presented, but those facts and circumstances have not been overlooked by us, and they have been urged upon our attention with much persuasive force by the able counsel for the appellant.

After a painstaking study and weighing of all the evidence in this case we are of the opinion that Mrs. Kent did not make the joint survivorship deposit with an intent to give Mrs. Tetlow a then joint tenancy and ownership in the fund; on the other hand, we

think the evidence justifies the conclusion that neither Mrs. Kent nor Mrs. Tetlow understood that the making of the joint survivorship deposit deprived Mrs. Kent of the beneficial ownership of the fund during her life or divested her of her right to make a testamentary disposition of it. The letter of June 10, 1906, wherein Mrs. Kent expressed for the first time apparently her decision to use both names in making a deposit in the bank, shows plainly that she did not then intend by so doing to divest herself of the right to dispose of the fund by will, for she therein stated that it was to be an arrangement until "I get ready for a will." And we find no sufficient evidence of a change in her intention in that respect up to the time the deposit was made. The answer of Mr. Tetlow in cross-examination, to which reference has been made, that Mrs. Kent said she wanted to make the deposit in her name and Mrs. Tetlow's so "it would be theirs while they lived" has already been commented on. Considering that answer in connection with the other testimony of the witness, in both direct and cross-examination, we have too much doubt that it expresses the exact words used by Mrs. Kent to accord to it the importance contended for by the appellant, especially in view of the subsequent acts of Mrs. Kent. Nor do we think there is any material significance in the fact that Mr. Ormsbee answered affirmatively the leading question asked of him in redirect examination containing a similar expression. He had already testified that Mrs. Kent said that she wanted the deposit made "so Mrs. Tetlow could draw the money *for convenience's sake*. She lived in Maine and Mrs. Tetlow lived here."

But it is of the utmost significance, we think, as showing that Mrs. Kent did not intend in making the deposit to deprive herself of the right to dispose of the fund by will, that immediately subsequent to the deposit she made the will wherein, as it must be conceded, she assumed to exercise the right to dispose of it as her property. She did not do that as a meaningless and idle ceremony. The evidence amply shows that the making of a satisfactory testamentary disposition of her property had been a matter which she had contemplated for years, and that the determination of its provisions and the fear that she might die before it was completed had caused her much anxiety. The fact therefore that she carried out

that long cherished and fixed purpose to make a will immediately subsequent to the deposit in question leaves no doubt in our mind that she did not intend when she made the deposit to give Mrs. Tetlow a then joint ownership with her in the deposit. Moreover, those wills were made with Mrs. Tetlow's full knowledge that they were being made and of their provisions, which she knew could not be carried out unless this fund belonged to her aunt, and yet she made no suggestions to her to the contrary. We are therefore constrained to the conclusion that the appellant's conduct touching the matter of the making and execution of the wills by her aunt, subsequent to the joint survivorship deposit, is inconsistent with the claim she now makes that Mrs. Kent in making that deposit made a gift in presenti to her of a joint ownership in it.

It remains to consider if there was a gift *causa mortis* of the fund to Mrs. Tetlow.

We have already found that Mrs. Kent in making the deposit did not intend to deprive herself of the ownership of the fund so long as she lived or of the right to dispose of it by will. It follows, therefore, that no gift *causa mortis* was made at that time.

There is some testimony, however, by Mr. and Mrs. Tetlow tending to show that thereafter Mrs. Kent made such statements as, "everything is going to Nellie" and, "all I have got is Nellie's," and, "she wanted me to have it." But even those statements were not shown to have been made by Mrs. Kent at any time when she was in contemplation of the near approach of death as required in a gift *causa mortis*. In fact it does not appear when those statements were made. We are therefore clearly of the opinion that Mrs. Tetlow's claim of title to the fund in question under a gift *causa mortis* is not sustained by sufficient proof.

Accordingly it is the decision of the court that the fund in question does not belong to the appellant but is a part of the estate of Amanda M. Kent and should be so accounted for.

A decree will therefore be made ordering Ellen J. Tetlow to inventory and account for as a part of the estate of Amanda M. Kent, the amount which stood to the credit of said joint survivorship account in said Providence Intsitution of Savings on January

18, 1911, when she withdrew the same, to wit, the sum of $6,188.40, together with interest thereon at 4 per cent compounded semi annually from January 1, 1911, (the date to which the last interest credit to said deposit was made), to the date of the decree.

*So ordered.*