PULCHERIE CORMIER *vs.* LEONA P. CARTY.

Suffolk.    April 23, 1979. — October 4, 1979.

Present: GOODMAN, BROWN, & GREANEY, JJ.

*Joint Tenants. Personal Property*, Joint tenancy. *Trust*, Personal property.

A determination by a Probate Court judge that three bank bonds in the joint names of the plaintiff and the defendant were held subject to an oral trust for the benefit of the plaintiff during the plaintiff's life with the remainder payable to the defendant upon the death of the plaintiff was warranted by the evidence. [402-405]

CIVIL ACTION commenced in the Probate Court for the county of Suffolk on September 3, 1976.

The case was heard by *Fitzpatrick, J.*

*Charles R. Desmarais* for the plaintiff.

*David Entin* for the defendant.

GOODMAN, J. The plaintiff (Pulcherie) appeals from a judgment of a Probate Court which determined that three bonds of the Seattle National Bank in the joint names of the plaintiff and the defendant (Leona) were held subject to an oral trust "for the benefit of the plaintiff during the plaintiff's life . . . with the remainder payable to the defendant upon the death of the plaintiff." The judgment declares that these bonds represent "the monies originally in the Charlestown Savings Bank, Merchants Cooperative Bank, and Suffolk Franklin Savings Bank . . . subject to [that] oral trust . . . ." We affirm the judgment. The trial judge's findings of fact[1] support the

---

[1] The plaintiff's counsel complains that the trial judge wrote to the defendant's counsel sometime after the close of the hearing asking, "[P]lease prepare for my consideration Suggested Findings of Fact, Conclusions of Law and a Judgment . . . ." However, a copy of that

judgment, and the plaintiff points to nothing in the findings or the evidence before us which would lead us to conclude that the findings are clearly erroneous. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

The judge found that the accounts in the Suffolk Franklin Savings Bank and the Merchants Cooperative Bank were established in 1971 from previous accounts in those banks in the joint names of Pulcherie and Graziella MacKinnon, Pulcherie's younger sister (Graziella). Pulcherie was then in her late seventies[2] and lived together with Graziella until Graziella died in 1975. Graziella had worked throughout her life, and the judge found that she had deposited considerable amounts of money in those previous accounts. Leona is their grandniece; she lives in the State of Washington. Over the years, since the 1940's, Graziella made yearly visits to the State of Washington, where she stayed with Leona's family for periods of four to six weeks.

Transfers of the previous accounts into the 1971 accounts were made in September of that year at the respective banks by Graziella, Pulcherie and Leona, who came to Boston at Graziella's request. The judge found that "[a]t the time of the transfer into the names of the plaintiff and defendant, the plaintiff was present, and Graziella told the defendant that she was worried that if

letter was sent to the plaintiff's counsel, who then filed a "Motion for Mistrial" and a "Motion to Discharge Case From [the trial judge's] Further Consideration." These motions were heard and properly denied. They were frivolous. The plaintiff's counsel had every opportunity to file proposed findings of fact, either before or after he received the letter to the defendant's counsel. Nor did he move after the entry of judgment that the findings be amended. See Mass.R.Civ.P. 52(b), 365 Mass. 817 (1974).

The plaintiff's complaint that the judgment did not issue until several months after the close of the hearing (see G. L. c. 220, § 14A) does not, as she contends, entitle her to a new trial. See *Bondsville Realty, Inc.* v. *Diamond Intl. Corp.*, 360 Mass. 870 (1972).

[2] The background facts are taken from the trial judge's findings supplemented by such of the evidence as is not in issue. See *Mechanics Natl. Bank* v. *Shear*, 7 Mass. App. Ct. 255, 257 (1979).

she predeceased the plaintiff that there would be no one
to take care of her, and that she wanted defendant to take
care of the plaintiff's needs for so long as she should live
and after plaintiff was gone the money would belong to
defendant. This the defendant promised Graziella she
would do, and this met with the approval of the plaintiff
who was present at the time."[3]

The judge further found that the account in the
Charlestown Savings Bank in the joint names of Pulcher-
ie and Leona was established in January of 1974 with
money taken from envelopes marked with Graziella's
name contained in the National Shawmut Bank safe de-
posit box (see note 3, *supra*). The cash was then taken
to the Charlestown Savings Bank, and there Pulcherie
and Leona opened a joint account. This was done at Gra-
ziella's direction; she had suffered a slight stroke at this
time. The judge could infer that the parties were actuated
by the same motives and intentions as were involved in
the 1971 transaction. *Malone* v. *Walsh*, 315 Mass. 484,
490 (1944). Indeed, Leona testified that in 1975, when
Graziella was terminally ill, Graziella "said to take care
of Pulcherie . . . she asked me also to be sure that it was
done."

In view of the circumstances surrounding the establish-
ment of the 1971 and 1974 accounts, their form is not
controlling as between Pulcherie and Leona. "[T]he mere
form of the deposits does not settle the matter." *Drain* v.
*Brookline Sav. Bank*, 327 Mass. 435, 440 (1951). Cf.
*DePasqua* v. *Bergstedt*, 355 Mass. 734 (1969). See also 1
Scott, Trusts § 24 (3d ed. 1967). Just what relationship
was established depends on the intent with which it was
created, and this is a question of fact. *Blanchette* v. *Blan-
chette*, 362 Mass. 518, 524 (1972). The plaintiff has demon-
strated no inconsistency in the judge's conclusion that
the parties contemplated a trust relationship. That

---

[3] At the same time a similar transfer was made of a safe deposit box
at The National Shawmut Bank of Boston.

Pulcherie's name was on the accounts as joint owner could indeed give her legal rights against the banks, but it did not preclude a finding on the evidence that the arrangement among Graziella, Pulcherie and Leona established a trust fund with Leona as trustee to control the fund (as set out in the judgment) "for the benefit of the plaintiff during the plaintiff's life, the funds thereof to be expended only for the reasonable and necessary benefit and care of the plaintiff as needed, during her lifetime, with the remainder payable to the defendant upon the death of the plaintiff." See *Ide* v. *Pierce*, 134 Mass. 260, 263 (1883); *Greeley* v. *O'Connor*, 294 Mass. 527, 533 (1936); *MacLennan* v. *MacLennan*, 311 Mass. 709, 714 (1942), *S.C.*, 316 Mass. 593 (1944); *Blanchette* v. *Blanchette*, 362 Mass. at 522. We see nothing that would compel the judge to accept the plaintiff's contention that an agency relation was established which contemplated that Pulcherie as principal could, during her lifetime, revoke the arrangement and assume control of the disposition of the accounts or appoint another in Leona's place. The judge could have found from the evidence, including the relationship of the parties and the age of Pulcherie, that no such temporary arrangement was contemplated. Cf. *Bradford* v. *Eastman*, 229 Mass. 499, 500 (1918) (joint account for convenience while the former sole owner was on a trip); *Miles* v. *Caples*, 362 Mass. 107, 114 (1972) (joint account for convenience in paying former owner's bills during her illness). Rather, the evidence is convincing that the arrangement was intended to last during Pulcherie's lifetime, with Leona assuming the responsibility of caring for Pulcherie from the trust fund. The judge could have found that the 1971 and 1974 transfers were intended to make Leona the surrogate for Graziella, whose control of the disposition of the monies which went into the 1971 and 1974 accounts was recognized by Pulcherie; she participated in the 1971 and 1974 transfers at Graziella's

behest and acknowledged Graziella's control in the matter.[4]

Pulcherie argues that her right in the previous accounts could not be vitiated by the 1971 arrangement. The short answer is that the judge could have found that Pulcherie participated in the "transfer[s which] destroy[ed] the [original] arrangement with the bank, the terms of which gave rise to the [original joint accounts]." *Burns* v. *Paquin*, 345 Mass. 329, 332 (1963). Thus, we need not speculate (just as the judge did not speculate) as to the significance of the designations on the previous accounts or of the designations on various documents relating to parcels of real estate, the proceeds of which were put in those accounts.

*Judgment affirmed.*

---

[4] Leona testified that, prior to the 1974 transfer, in discussing the accounts Pulcherie said that "Graziella could do with her money what she wanted to."