ROLAND DESROSIERS, individually and as administrator,
& another vs. YVETTE GERMAIN.

Middlesex. November 5, 1981. — December 30, 1981.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Gift. Joint Tenants. Personal Property,* Joint tenancy. *Evidence,* Relevancy and materiality, Intent, State of mind.

In an action to establish the ownership of certain joint bank accounts in the names of a mother, who died intestate, and her daughter, evidence warranted the judge's finding that the mother did not intend to make a gift to her daughter when she created the joint accounts. [855-857]

Even if statements made by a mother some time after she had opened certain joint accounts with her daughter were not admissible to prove the mother's initial intent in opening the accounts, the statements were admissible to show that, from the time the accounts were created up to the mother's death, she never changed her intent to have all her children share in the funds in the accounts. [857-858]

CIVIL ACTION commenced in the Probate Court for the county of Middlesex on September 2, 1977.

The case was heard by *Sweeney,* J.

*Lawrence C. Weisman* for Yvette Germain.

*Albert J. Marcotte (Michael Najjar* with him) for the plaintiffs.

HALE, C.J. This is an appeal by Yvette Germain from a judgment of a Probate Court which adjudicated that certain joint bank accounts in the names of Blanche A. Desrosiers, who died intestate on June 26, 1977, and her daughter Yvette Germain were the property of the estate of the late Mrs. Desrosiers and not the property of Yvette individually. The action was brought by Mrs. Desrosiers' other two children, Angela Fugere and Roland Desrosiers, the latter act-

ing individually and in his capacity as the administrator of the estate of Blanche A. Desrosiers.[1]

The evidence at trial and the judge's findings of fact established that before the death of Mrs. Desrosiers the family relationship was a close and friendly one. Mrs. and Mr. Desrosiers were hard working French-Canadians who had settled in the area of Lowell known as "Little Canada." The children grew up together there, and at different times Yvette and Angela lived with their respective husbands in the home of Mrs. and Mr. Desrosiers. After leaving home the children settled in Lowell or in neighboring locales and visited their parents and each other at regular intervals.

Their father died intestate on February 14, 1967. He left a small estate, and each of the children and Mrs. Desrosiers was entitled to a share of it. On or about March 3, 1967, Mrs. Desrosiers approached Yvette, Angela and Roland to have them assign their interests in their father's estate to her. Roland went with his wife to his mother's home to execute an assignment, and after he signed it his mother said that she was happy that he had done so and that whatever was left after her death would be divided among the three children. Angela executed an assignment at her home with her husband, her mother and Yvette present. After Angela executed it, her mother also told her that whatever was left after she (Mrs. Desrosiers) died would be divided among the children. Yvette also executed an assignment without objection.

Around this same time (late February and March of 1967) Mrs. Desrosiers had Yvette's name added to four bankbooks which represented the combined life savings of Mrs. Desrosiers and her late husband. Only two of the joint accounts, which are the subject of this action, had outstanding balances at Mrs. Desrosiers' death. These were a Central Sav-

---

[1] No question has been raised as to whether Angela and Roland in his individual capacity are proper parties.

ings Bank account and a Jeanne d'Arc Credit Union account which aggregated almost $29,000.[2]

Mrs. Desrosiers used the money in the joint accounts for some of her expenses and for travel. At no time did Yvette have custody of the bankbooks[3] or withdraw money from the accounts, nor did she pay income tax on the interest paid on the accounts prior to her mother's death. The existence of the accounts was not disclosed to Roland or Angela until February of 1968, when Roland asked his mother if she had enough money for a trip she was preparing to take. She responded by informing him of the Central Savings Bank account and noting that if she needed extra money Yvette could sent it to her.

There are four additional statements made by Mrs. Desrosiers or Yvette which are relevant to this appeal. In August of 1967 Mrs. Desrosiers was discussing with Angela and her husband an offer which Mrs. Desrosiers had received concerning the purchase of her home. She stated during that conversation that she would not sell her home because she had enough money to take care of her three children after she died. In August of 1976 Mrs. Desrosiers was at Angela's home talking with a Mrs. Bourassa, a friend whose husband had recently died. The subject of wills came up, and Mrs. Desrosiers stated that she did not need a will because Yvette and the children knew that whatever money was left after her death would be divided three ways. About one month before Mrs. Desrosiers died she was visiting Roland in his home. He asked her if her affairs were in order, and she responded that everything was to be divided three ways, including the estate and bankbooks and everything which she left behind. And sometime after Mrs. Desrosiers

---

[2] The lower court's findings of fact show that the Central Savings Bank account contained $3,554.74 and the Jeanne d'Arc account contained $25,273.64 as of October 27, 1980.

[3] The bankbooks were in Mrs. Desrosiers' home when she died. The testimony was inconsistent whether Yvette knew of their exact location or whether the children had to search for them. The judge made no finding on this point.

died and while Yvette, Angela and Roland were discussing their mother's estate, Yvette stated that the house, the jewelry and the bankbooks would be divided equally among them if she could be administratrix of the estate.

The judge concluded that there was no donative intent on the part of Mrs. Desrosiers when she created the joint accounts with Yvette. His conclusion was that the accounts were formed only as a matter of convenience and so that the money could be distributed equally among the children without a will, and judgment was entered accordingly. Yvette, in support of her appeal, argues that the evidence was insufficient to rebut the presumption of donative intent when joint bank accounts are created and that the judge erroneously admitted evidence of statements made by Mrs. Desrosiers subsequent to the creation of the accounts in determining her intent at the time the accounts were created.

It is settled that the transaction of creating a joint bank account with the right of survivorship must be taken at face value unless evidence shows that the parties did not so intend. *DePasqua* v. *Bergstedt*, 355 Mass. 734, 736 (1969). If the creation of a joint account is intended as a gift, the gift is completed upon the creation of the account since the usual requirement of delivery when consummating a gift is replaced by the contract with the bank. *Castle* v. *Wightman*, 303 Mass. 74, 76 (1939). *Sullivan* v. *Hudgins*, 303 Mass. 442, 444 (1939). *Kittredge* v. *Manning*, 317 Mass. 689, 692-693 (1945). *Corkum* v. *Salvation Army of Mass., Inc.*, 340 Mass. 165, 167 (1959). Thus, despite a donor's retention of the passbook and reservation of all rights to income and corpus in a joint account, a valid present gift of survivorship in the account can arise under the established principle that a valid gift of property can be made while the donor retains a life interest in the property given. See *Chippendale* v. *North Adams Sav. Bank*, 222 Mass. 499, 502 (1916). However, although a joint account conclusively establishes the rights as between a joint tenant and the bank, it is always open to the estate of a deceased joint tenant to prove that there was no intention to create a gift to

the surviving tenant. *Malone* v. *Walsh,* 315 Mass. 484, 486 (1944). See also *Castle, supra; Ball* v. *Forbes,* 314 Mass. 200 (1943); *Campagna* v. *Campagna,* 337 Mass. 599 (1958); *Cormier* v. *Carty,* 8 Mass. App. Ct. 401, 403-404 (1979), *S.C.* 381 Mass. 234 (1980).

The finding as to the intent of the alleged donor when a joint bank account was created is a pure question of fact. *Ball* v. *Forbes, supra* at 205. *Blanchette* v. *Blanchette,* 362 Mass. 518, 524 (1972). The burden of proof is on the party who contends that the transaction is not to be taken at face value. *Blanchette, supra.* The evidence must be assessed in its entirety, and the trial court's assessment of it will be rejected only if "clearly erroneous." Mass.R.Civ.P. 52(a), 365 Mass. 730, 816 (1974).

Ignoring statements made by Mrs. Desrosiers subsequent to the creation of the joint accounts, there was sufficient evidence for the judge to find that Mrs. Desrosiers had not intended to create a gift to Yvette when adding her name to the account. There were the statements made by Mrs. Desrosiers, when she met with Roland and Angela to enable her to obtain the assets in her husband's probate estate, that whatever was left when she died would be divided among the three children. These statements were made contemporaneously or nearly so with the creation of the joint accounts.[4] The statement to Angela was made in the presence of Yvette. Compare *Barstow* v. *Tetlow,* 115 Me. 96, 107 (1916) (alleged donee's silence when will drawn disposing of funds in joint account inconsistent with position that these funds were a gift to her).

The retention of the bankbooks by Mrs. Desrosiers, although not dispositive, sheds light on whether she intended a gift when creating the joint accounts. *Sullivan* v. *Hudgins, supra. Battles* v. *Millbury Sav. Bank,* 250 Mass. 180, 187 (1924). There was also the statement made by

---

[4] Yvette's name was added to the Central Savings Bank account on February 20, 1967, and it was added to the Jeanne d'Arc account in March, 1967.

Yvette that if she were made "administrator," everything was going to be divided three ways. This was inconsistent with her testimony that the accounts were intended as a gift from her mother. The judge could have considered this as an admission by Yvette that she was aware that Mrs. Desrosiers intended the funds to be part of her estate. See *Barstow* v. *Tetlow, supra* at 107; *In re Estate of Cronholm,* 38 Ill. App. 2d 141, 152 (1962); *Koziol* v. *Harris,* 82 Ill. App. 2d 472 (1967); *In re Estate of Dawson,* 103 Ill. App. 2d 362 (1968). With this evidence, along with the evidence and the judge's findings that all the children were close to their mother, we cannot say that the judge was clearly in error in finding that Mrs. Desrosiers did not intend to make a gift to Yvette when she created the joint accounts.[5]

We turn now to the judge's consideration of statements made by Mrs. Desrosiers subsequent to her creation of the joint accounts as evidence of her donative intent. In its most recent opinion on this issue the Supreme Judicial Court expressly reserved the question whether such evidence was competent to rebut the presumption of donative intent which is raised when a joint bank account is created. See *DePasqua* v. *Bergstedt,* 355 Mass. at 737. An older case had held that statements by a grantor or assignor which would defeat his deed or assignment are inadmissible if made after the transaction has taken effect. *Kimball* v. *Leland,* 110 Mass. 325, 327 (1872). Other jurisdictions vary as to the rule to apply. Compare *Barstow* v. *Tetlow, supra* (subsequent statements inadmissible), and *In re Voges,* 276 App. Div. 982, aff'd, 301 N.Y. 617 (1950) (subsequent declarations inadmissible), with *In re Estate of Schneider,* 6 Ill. 2d 180, 187 (1955) (facts and circumstances pertaining to creation of account but happening thereafter can be inquired into in ascertaining intention of the parties), and *Katz* v.

---

[5] And, of course, the judge did not have to believe Yvette's testimony that her mother intended the accounts to be gifts to her. *Burns* v. *Paquin,* 345 Mass. 329, 332 (1963).

*Enos,* 68 Cal. App. 2d 266 (1945) (on issue of intent to convey deed, statements by grantor before or after the act are admissible to show the intent with which he performed the act).

But assuming, without holding, that Mrs. Desrosiers' subsequent statements were inadmissible to prove her initial intent, they were admissible for another purpose. The creation of the accounts and the intent to create a gift did not have to occur simultaneously. *Kittredge,* 317 Mass. at 693. Thus, although sufficient competent evidence showed that her initial intent was not a gift, she could have changed her intent at any time and completed a gift to Yvette. The admission in evidence of Mrs. Desrosiers' subsequent statements to Roland, Angela and Mrs. Bourassa was therefore proper, as those statements indicated that, from the time the accounts were created up to her death, she never changed her intent to have all her children share in the funds in the bank accounts.

The objection to this evidence was apparently grounded on relevance and hearsay. As just stated, however, the evidence was relevant. It was also admissible over a hearsay objection as a statement of a deceased person under G. L. c. 233, § 65. Since there was no request that the testimony be limited to show only Mrs. Desrosiers' subsequent intent, it was not error to admit it. *Bouchard* v. *Bouchard,* 313 Mass. 531, 537 (1943). *Commonwealth* v. *Wood,* 384 Mass. 641, 643-644 (1981).

Yvette Germain's final claim, that the judge's decision was affected by his personal prejudice against the parties, is wholly without merit. The judge's appeal to the parties to settle this intrafamily dispute was an impressive and commendable effort to persuade the parties to reach an agreement before his final determination would sever the family ties their parents had worked hard to build. There was no impropriety in his actions.

*Judgment affirmed.*