JOHN E. GALLAGHER vs. A. LEAVITT TAYLOR, executor, & others.[1]

No. 88-P-20.

Suffolk. January 10, 1989. — February 15, 1989.

Present: GREANEY, C.J., ARMSTRONG, & KASS, JJ.

*Limitations, Statute of. Gift. Joint Tenants. Personal Property,* Joint tenants.

An action by a legatee to determine and recover the amount of the legacy due to him was seasonably brought under the applicable statute of limitations, G. L. c. 197, § 19. [880]

In an action to recover a legacy the judge's findings of fact were not clearly erroneous and supported her conclusion that, at the time certain stock certificates were registered in the joint names of the testator and another, the testator did not intend to make a gift. [880-884]

CIVIL ACTION commenced in the Suffolk Division of the Probate and Family Court Department on January 9, 1984.

The case was heard by *Mary B. Muse,* J., and a motion for a new trial was heard by her.

*Robert M. Novack* (*Robert Michael Murray* with him) for Richard P. Desharnais.

*Gerald B. Gallagher* for the plaintiff.

GREANEY, C.J. The plaintiff, a legatee under the will of Edith R. Hartnett, brought this action in a Probate Court against the executor of the will and the other legatees named therein. See note 1. The amended complaint sought to determine ownership of certificates representing shares of the common stock of the Gillette Safety Razor Company (Gillette), which at the time of Hartnett's death stood in the names of Hartnett and the defendant Richard P. Desharnais as joint tenants with the

---

[1] Additional defendants include Richard P. Desharnais and other legatees and residuary legatees under the will of Edith R. Hartnett. The Attorney General was also named as a defendant.

right of survivorship. A judge of the Probate Court heard the case and entered "Findings of Fact and Conclusions of Law." She determined that the stock certificates and the dividends on the stock received after Hartnett's death by Desharnais were the property of the estate. A judgment to that effect (with other provisions which are not in issue on appeal) was entered. Desharnais has appealed from the judgment, and the plaintiff has appealed from the allowance of a motion by Desharnais to amend his answer. We affirm the judgment.

The judge's findings include the following facts. In June of 1970, Desharnais, a member of the congregation of the Holy Cross Fathers, began to administer spiritually to Hartnett who had been his longtime friend and benefactor. Thereafter, Desharnais established a relationship of trust with Hartnett, and he began to help her with her financial affairs. In 1973, Desharnais was given a power of attorney, which had been prepared by Hartnett's attorney, the defendant Taylor, so that Desharnais could write checks for certain of Hartnett's bills. This power of attorney also gave Desharnais access to Hartnett's safe deposit box. At this time, Hartnett was eighty-three years old and in failing health. Desharnais was forty-three years old.

Between November, 1973, and the spring of 1974, title to certain of Hartnett's bank accounts was placed in the names of Hartnett and Desharnais as joint owners. This was done to facilitate Desharnais's management of Hartnett's financial affairs.

Desharnais retained possession of the bank books, with the understanding that the money was still Hartnett's money, that she could have her money upon request, and that he was merely "doing errand[s] for her." He knew that he had no interest in the bank accounts even though they were held in joint names. Desharnais made withdrawals from the accounts as Hartnett requested.

About this time, Hartnett, Desharnais, and Taylor had discussions about 1,200 shares of Gillette common stock which Hartnett owned individually.[2] On July 19, 1974, Taylor, Hart-

---

[2] By the time the action was commenced, the stock had split two for one so that ownership of 2,400 shares was in issue.

nett, and Desharnais talked about a contemplated change in ownership of the stock to joint names. At this meeting, Taylor explained the legal significance of joint ownership, indicating that the signatures of both parties would be required to effect any future transfer of the stock. Desharnais stated that he would do whatever Hartnett wished relative to the certificate, including having his name removed from the certificate if she so requested. Under these conditions, title to the stock was changed. Based on the conversations that took place at the time of the transfer, and the arrangement with the bank books, the judge inferred that the parties understood that Hartnett did not intend to give up control of the stock, that she could always change the title to the stock, and that Desharnais would agree to any change.

Hartnett, Taylor, and Desharnais went to the bank where the safe deposit box which contained the stock certificate was located. Taylor went downstairs to the vault and obtained the certificate. Some time later, Desharnais returned the certificate, which had been changed to reflect the joint ownership of Hartnett and Desharnais to Hartnett's safe deposit box where it remained until Hartnett's death. Desharnais testified that he had been given a key to Hartnett's safe deposit box for her convenience so that he could store or remove articles upon her request. It was in this context that Desharnais put the stock certificate back into the safe deposit box. Dividends on the stock were received and cashed by Hartnett alone until her death.

Desharnais continued to assist Hartnett with her affairs until June, 1976, when, pursuant to a telephone request relayed to Desharnais by a friend, he returned to her two bank books along with a letter dated June 3, 1976. In that letter, Desharnais requested, in strong language, that Hartnett refrain from making contact with him (as her last attempts to do so had caused him embarrassment), and that she "take [his] name off of [her] will and . . . whatever other consideration [she] had in mind."[3]

---

[3] Two wills of Hartnett were introduced in evidence. On May 30, 1973, she executed a will which provided that Desharnais receive a $20,000 cash bequest and a one-twelfth share of the residue of the estate. On August 28,

Desharnais also stated that he had no interest in any of her funds and that he would communicate with Taylor to "confirm this observation and make it factual." Desharnais, however, did not make contact with Taylor during Hartnett's lifetime concerning the matter. Further, Desharnais stated that Hartnett was to consider his letter as "an absolutely final note" because he could not suffer the loss of peace of mind attendant to helping her.[4] Shortly thereafter, Desharnais called Hartnett to verify that she had received the bank books. At the time of this letter, Hartnett, who had a heart ailment and poor vision, had annoyed Desharnais by her persistent telephone calls to him. The only other communication between the two thereafter was Hartnett's telephone call to Desharnais to extend Easter greetings in 1977. In that call there was no discussion of the stock. Hartnett died on September 2, 1979.

Desharnais made a demand upon Taylor, as executor of Hartnett's estate, for delivery of the stock certificate. After an exchange of correspondence, Taylor sent to Desharnais a copy of a letter addressed to him (Taylor), the original of which had been signed by Hartnett on January 27, 1977. In this letter, Hartnett communicated her wish that the stock certificate be reissued in her name alone. She further stated in the letter that the certificate had been placed in joint names in 1974 solely "as a matter of convenience to me and with no intent on my part that Father Desharnais should be the individual owner of the assets upon my death." Nothing was done by Taylor to comply with Hartnett's wishes, and no evidence was introduced that Hartnett ever asked Desharnais to change the stock certificate back to her sole name.

---

1975, she executed a new will in which Desharnais's bequest was reduced to $3,000, but which still gave him an equal share of the residue with the plaintiff and the other residuary legatees named in note 1, *supra*.

[4] The difficulties between Desharnais and Hartnett arose because Desharnais's father had become ill and required considerable care and attention from his son. In January, 1976, Desharnais's father died after a long illness. Desharnais required psychological counseling because he was "not himself." Desharnais's counsellor identified Hartnett as the cause of the distress because she was an enormous worry to him. The counsellor advised Desharnais to have nothing more to do with her.

When the dispute over ownership of the stock could not be settled, Taylor, as executor, was asked to commence an action to determine the question. Taylor delayed doing so, apparently hoping that the question could be resolved without litigation while he attended to other matters connected with the probate of the estate. In the absence of action by Taylor, the plaintiff, John E. Gallagher (also a Roman Catholic priest), commenced the present action on January 9, 1984.

1. The judge allowed a motion by Desharnais's counsel, filed on the day trial commenced, to amend his answer to allege that the plaintiff's action was barred by the statute of limitations. The judge then found that the action had been brought in a timely manner.

We pass the question whether amendment of the answer was properly allowed over the plaintiff's objection because, on the facts found, the judge's conclusion that the action was not time-barred was correct. Contrary to Desharnais's argument that another statute of limitations applies, the action is governed by G. L. c. 197, § 19, and was seasonably brought by the plaintiff to determine and recover the amount of the legacy due to him. See *Kent* v. *Dunham*, 106 Mass. 586, 591 (1871); *Smith* v. *Wells*, 134 Mass. 11, 13 (1883); Newhall, Settlement of Estates § 236 (4th ed. 1958).

2. The essential questions are whether the judge's findings of fact are clearly erroneous, and, if not, whether they support her legal conclusion that no gift of the stock had been intended by Hartnett at the time of registration of the stock certificates in joint names. The nature of the "clearly erroneous" test, which Mass.R.Civ.P. 52(a), 365 Mass. 816-817 (1974), establishes as the standard governing the reliability of findings of fact made by a trial judge, has been stated many times. See *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160-161 (1977); *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977); *Simon* v. *Weymouth Agricultural & Indust. Soc.*, 389 Mass. 146, 148-149 (1983); *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985). We emphasize the following three principles of the standard which have relevance to this case. First, the judge's

assessment of the quality of the testimony is entitled to our considerable respect because "it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence." *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. at 675. Second, "[i]f the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson* v. *Bessemer*, 470 U.S. 564, 573-574 1985). Third, " '[t]he burden is squarely on the appellant to show an appellate court that a finding is clearly erroneous. . . .' " *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank*, 395 Mass. at 621-622, quoting from *Matter of Multiponics, Inc.*, 622 F.2d 709, 723 (5th Cir. 1980).

Although Desharnais argues that his testimony should govern the question of donative intent, it is apparent that the judge either did not accept the testimony or gave it very little weight.[5] We are satisfied that the judge's findings of fact are not clearly erroneous under the principles set forth above, that they are supported by direct evidence or expressed reasonable inferences drawn from the evidence, and, accordingly, that they must be accepted for purposes of testing the tenability of her legal conclusion that the stock transaction did not constitute a gift.

"It has been settled 'that the transaction is taken at its face value unless the evidence shows that it was not so intended, that . . . the form of the [transaction] does not settle the matter, and that it is open to the [plaintiff] to show by attendant facts and circumstances that [the deceased] did not intend to make a present completed gift of a joint interest . . . .' " *DePasqua* v. *Bergstedt*, 355 Mass. 734, 736 (1969), quoting from *Kittredge* v. *Manning*, 317 Mass. 689, 692-693 (1945). See *Doucette* v. *Doucette,* 361 Mass. 156, 158 (1972). The finding as to the alleged donor's intent at the time of the creation of the

---

[5] In particular, the judge obviously did not believe Desharnais's testimony that Hartnett intended the stock to be a gift to him.

joint ownership has been said to involve "a pure question of fact." *Desrosiers* v. *Germain*, 12 Mass. App. Ct. 852, 856 (1981). See *Blanchette* v. *Blanchette*, 362 Mass. 518, 524 (1972). These rules apply to the transfer of stock certificates as well as to the transfer of bank accounts. *Id.* at 521, and cases cited.

Ignoring Hartnett's letter of January 27, 1977, for the moment, the judge's findings support her conclusion that at the time of the registration of the stock certificate in joint names Hartnett did not intend to make a gift. She retained the certificate and continued to collect and spend the dividends. The absence of delivery of actual possession of the stock, while not dispositive, is some indication of Hartnett's intent even when weighed against the fact that Desharnais had a key to her safe deposit box. See *Sullivan* v. *Hudgins*, 303 Mass. 442, 444 (1939); *Battles* v. *Millbury Sav. Bank*, 250 Mass. 180, 187 (1924). More important, the conversations and circumstances pertaining to the transfer suggested that Hartnett intended (and Desharnais understood) that the transfer was one of convenience, essentially similar to the prior transactions involving the bank accounts. Further, the judge was also entitled to give weight to Desharnais's letter of June 3, 1976. While that letter is enigmatic, it reasonably could have been considered by the judge as expressing Desharnais's continuing understanding of the transaction and his wish that his name be taken off the stock certificate so that no question would arise after Hartnett's death that he ever had any interest in the certificate.[6] In the last analysis, the question is a factual one, and we cannot say that the judge's resolution of the question was clearly erroneous.

---

[6] Desharnais argues that his letter should not be taken as a valid disclaimer of his joint interest in the stock certificate pursuant to G. L. c. 191A, §§ 2 and 4. We agree with Desharnais on the general point that the letter would not constitute a valid disclaimer under G. L. c. 191A, assuming that the statute might have had application in the circumstances. The judge did not consider it as such, but appears to have considered the letter only as it furnished some evidence of Desharnais's understanding of Hartnett's intent when the transfer was made. Our conclusion upholding the judge's finding that there was no completed gift renders it unnecessary to consider the letter as a renunciation of the gift.

We consider Desharnais's argument, based on *DePasqua* v. *Bergstedt*, 355 Mass. at 736-737, that Hartnett's letter of January 27, 1977, to Taylor (which was admitted in evidence without objection) is the only evidence in the case to rebut the presumption of donative intent which was raised when the stock certificate was placed in joint names, and, that, standing alone, the letter was insufficient to sustain the judge's conclusion that no gift had been intended. It is reasonably clear from the judge's decision that she was aware of the reservations expressed in the *DePasqua* case about evidence similar to the letter.[7] The judge rested her decision of the issue of donative intent principally upon the actions, statements, and inferred mutual understandings of the parties. There was, indeed, competent evidence, apart from Hartnett's letter, to support the judge's conclusion. For this reason alone, Desharnais's argument premised on the *DePasqua* case has no application. Moreover, the judge properly could have considered the letter as an indication that Hartnett had never changed her initial intent concerning ownership of the stock and continued to consider it an asset which, if not disposed of in her lifetime, would pass under her last will to the legatees named therein, including Desharnais.[8] See *Desrosiers* v. *Germain*, 12 Mass. App. Ct. at 857-858.

---

[7] In *DePasqua,* the Supreme Judicial Court reserved the question whether posttransfer statements by an alleged donor were competent by themselves to rebut the presumption of donative intent raised by the creation of a joint account. 355 Mass. at 737.

[8] The fact that Hartnett executed a new will on August 28, 1975, which reduced the specific bequest to Desharnais by $17,000 from the amount contained in her will of May 30, 1973, could be argued by Desharnais as a circumstance tending to support donative intent. Several other explanations for the reduction in the specific bequest can be suggested by the evidence, including a possible inference that, in the summer of 1975, Desharnais and Hartnett were becoming estranged. What inference, if any, should be drawn from the differing bequests in the two wills was a matter for the judge. The judge did not expressly discuss the relationship between the wills and the transfer of the stock. Her apparent decision to put little weight on the differing amounts of the legacies is a matter which we will not disturb.

Our conclusion that the judge's decision is based on findings which are supported by the evidence, and on conclusions which are legally sound, leads us to uphold her denial of Desharnais's motion for a new trial, which was argued on the grounds that the decision was against the weight of the evidence and against the law.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*