NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-941

SARAH MINDEN

vs.

STEPHEN WRIGHT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial in the Superior Court, the plaintiff prevailed on her claim of unjust enrichment, and judgment entered in her favor.  The defendant appeals, challenging certain aspects of the judge's decision as clearly erroneous. We affirm.

Background.  We summarize the judge's factual findings. The parties were involved in a long-term relationship from approximately 2005 to 2020.  In 2007 the defendant moved into the plaintiff's home in West Roxbury.  At the time the defendant was not working, and he told the plaintiff that he did not have much money.  As a result the parties initially agreed that the defendant could live in the plaintiff's home without paying rent

or living expenses and that, in exchange, he would help her with chores, driving, and other responsibilities.

Years before the defendant moved in, the plaintiff had employed people to oversee her bank accounts and credit card accounts because she was too busy with work to handle her finances by herself. Soon after the defendant moved in, he agreed to take over this role. To facilitate this, the plaintiff added the defendant's name to her Brookline Bank account (account) with the expectation that he would pay her expenses and the parties' joint expenses from the account. The defendant never asked the plaintiff if he could use the account to pay for his own personal expenses, and the plaintiff never authorized the defendant to do so. The plaintiff had had the account since 1978, and she deposited all of her earnings into it.

Several years later, when the plaintiff reviewed her financial statements from 2012 and 2013, she discovered that the expenses she had paid were "enormous" compared to what they were before the defendant moved into her house. This discovery prompted her to have a conversation with the defendant in 2014. By this time the defendant was working, and the plaintiff told him that he needed to pay one-half of their joint expenses going forward. The defendant agreed. He then sent the plaintiff an email message itemizing their individual and joint expenses, and

they discussed which items were his alone to pay.  The defendant also included in the email message a list of "MONEY CONTRIBUTED" by him, totaling approximately 470,000 to 500,000 Canadian dollars, which the plaintiff understood to represent the amount of money he had deposited into the account over the years.  The plaintiff trusted the defendant and believed he had contributed this money.  Although the parties did not specifically discuss how the defendant would pay his share of their joint expenses going forward, the plaintiff assumed he would pay it in lump sums, based in part on his claim of previous contributions to the account.

In 2020 the defendant moved out of the plaintiff's home, and the plaintiff took back responsibility for her finances.  Upon reviewing her financial statements, the plaintiff discovered that the defendant had used the account to pay for his personal expenses, including his long-term care insurance, medical bills, plane tickets, and credit card bills.  The plaintiff also discovered that the defendant had contributed "nothing ever" into the account.  The plaintiff put together her financial statements and sent the defendant an email message asking to discuss them.  The defendant replied, "No."

In 2022 the plaintiff filed the underlying complaint raising five claims, including unjust enrichment.  At trial the defendant introduced financial statements, which revealed that

3

his assets had appreciated from approximately $500,000 to approximately $1.5 million while he was living with the plaintiff.  The plaintiff was not previously aware that the defendant had $1.5 million in assets.

After three days of testimony, the judge found for the plaintiff on her unjust enrichment claim and awarded her restitution in the amount of $137,516.41.[1]  This award consisted of (a) the personal expenses that the defendant had charged to the account and the plaintiff's credit cards from 2016 through 2020, and (b) one-half of the parties' joint expenses from 2016 through 2020.[2]  After the addition of prejudgment interest and costs, judgment entered for the plaintiff in the total amount of $185,980.10.

Discussion.  In an appeal from a judgment entered after a bench trial, we review the judge's conclusions of law de novo, but we must accept the judge's findings of fact unless clearly erroneous.  See Cavadi v. DeYeso, 458 Mass. 615, 624 (2011).  A finding is clearly erroneous only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Demoulas v. Demoulas Super

---

[1] The judge found for the defendant on the plaintiff's remaining claims.  Those claims are not at issue on appeal.

[2] The plaintiff did not present evidence about, or seek restitution for, expenses incurred before 2016.

Mkts. Inc., 424 Mass. 501, 509 (1997), quoting Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977). In our review we must give due regard to the judge's assessment of the credibility of the witnesses and weighing of the evidence. See Demoulas, supra at 509-510. Thus, "[s]o long as the judge's account is plausible in light of the entire record, an appellate court should decline to reverse it." Id. at 510.

"Unjust enrichment occurs when a party retains the property of another 'against the fundamental principles of justice or equity and good conscience.'" Bonina v. Sheppard, 91 Mass. App. Ct. 622, 625 (2017), quoting Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005). To prevail on a claim of unjust enrichment, "the plaintiff must establish 'not only that the defendant received a benefit, but also that such a benefit was unjust,'" which "turns on the reasonable expectations of the parties." Bonina, supra, quoting Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013). Here, the defendant argues that the judge's findings about the parties' reasonable expectations were clearly erroneous in two respects. Neither argument persuades us.

First, the defendant maintains that the plaintiff had no expectation that the money in the account would remain only hers to use because she added the defendant to the account in 2008 so that the defendant "could use the monies for both personal and

5

shared expenses."  We understand the defendant to be arguing that the judge clearly erred in finding that the plaintiff added the defendant to the account "for her convenience" and that it was "clear she never intended to gift him an interest" in the account.  These findings are not clearly erroneous, however, as the plaintiff testified that her intent was to facilitate the defendant's handling of her finances, that she did not authorize him to pay his personal expenses from the account, and that the parties agreed in 2014 that the defendant would pay his personal expenses and one-half of their joint expenses going forward.  Unlike in the cases cited by the defendant, the judge heard directly from the plaintiff about her intent in creating the joint account.[3]  The judge was entitled to credit the plaintiff's testimony.  See Bonina, 91 Mass. App. Ct. at 625 (affirming judgment for plaintiff on unjust enrichment where "judge's factual findings demonstrate[d] that the substantial contributions made by the plaintiff to improve the home were not meant to be gifts to the defendant").

_____

[3] All of the cases cited by the defendant involve administration of estates and specifically the question whether the decedent's creation of a joint account was intended to be an inter vivos gift.  And even in that context, "although a joint account conclusively establishes the rights as between a joint tenant and the bank, it is always open to the estate of a deceased joint tenant to prove that there was no intention to create a gift to the surviving tenant."  Desrosiers v. Germain, 12 Mass. App. Ct. 852, 855-856 (1981).

6

Second, the defendant argues that the plaintiff had no expectation that the defendant would reimburse her for one-half of the parties' joint expenses because she agreed that he did not have to pay his share so long as he named her the main beneficiary of his estate, which he did in wills executed in 2014 and 2017. As the judge found, however, the defendant worded his wills such that the plaintiff would be entitled to benefit from his estate only if the parties were still living together at the time of his passing. The judge credited the plaintiff's testimony that she did not know at the time the defendant executed the wills that they included this condition.

Again, it was for the judge to assess the credibility of the witnesses, and we defer to her determination.  See Demoulas, 424 Mass. at 509-510.

> Judgment affirmed.
>
> By the Court (Shin, Ditkoff & Tan, JJ.[4]),
>
> Clerk

Entered:  June 15, 2026.

---

[4] The panelists are listed in order of seniority.