CONCETTA A. FLORIO[1] vs. CONCETTA A. FLORIO, administratrix,[2] & others.[3]

---

[1]Individually and as administratrix of the estate of Mary T. Palmeri.

[2]Of the estate of John A. Palmieri. We note that although Mary T. Palmeri and John A. Palmieri were siblings, they spelled their last names differently.

[3]Agnes Mecili and Thomas Mecili. Neither Agnes Mecili nor Thomas Mecili an-

September 2, 2005. *Trust,* Reformation, Taxation, Bank account. *Taxation,* Estate tax. *Practice, Civil,* Choice of forum.

Concetta A. Florio (Concetta), individually and as administratrix of the estate of Mary T. Palmeri (Mary), commenced an action in the Probate and Family Court seeking a determination that the funds in three allegedly joint bank accounts — two accounts opened at a Cambridge Savings Bank branch in Massachusetts, and one account opened at a First Union National Bank branch in Florida — belonged solely to Mary at the time of her death, as well as an order transferring funds from those accounts to Mary's estate.[4] A judge in the Probate and Family Court reported the case to the Appeals Court, and we granted Concetta's application for direct appellate review. For reasons we shall explain, we conclude that, on the record before us, the Massachusetts bank accounts are not joint accounts and the requested relief appears not to be necessary. We decline to grant the requested relief with respect to the Florida account.

Concetta, Mary, the late Reverend John A. Palmieri (John), and a third (deceased) sister were siblings; Concetta is the administratrix of both Mary and John's estates. Concetta alleged in her complaint that, at the time of Mary's death, both Mary and John were joint owners of the three bank accounts at issue but that John was listed for "convenience only," and that Mary was in fact the sole rightful owner of the funds. The complaint further alleged that substantial tax savings would result for the beneficiaries of both estates if it were determined that John was listed on the accounts for convenience purposes only.

Concetta contends that this case is similar to those in which the court has reformed trusts "on clear and decisive proof that the instrument fails to embody the settlor's intent because of scrivener's error," *Walker* v. *Walker,* 433 Mass. 581, 587 (2001), quoting *DiCarlo* v. *Mazzarella,* 430 Mass. 248, 250 (1999), and "produced tax results that were clearly inconsistent with the settlor's tax objectives." *Walker* v. *Walker, supra,* quoting *BankBoston* v. *Marlow,* 428 Mass. 283, 285 (1998). See *Putnam* v. *Putnam,* 425 Mass. 770, 772 (1997), and cases cited. We decide such " 'uncontested' cases," where an interpretation of Massachusetts law is needed, "because the parties have represented that a decision from this court will facilitate their dealings with the Internal Revenue Service. We do so because we are mindful of the fact that the Internal Revenue Service and the Federal courts are not bound by decisions of lower State courts." *Walker* v. *Walker, supra* at 582. Nonetheless, we have "declined to decide cases in inappropriate circumstances, such as where no question of [Massachusetts] law . . . is presented." *Id.* at 583. See *State St. Bank & Trust Co.* v. *Alden,* 444 Mass. 1011, 1012 (2005); *Kirchick* v. *Guerry,* 429 Mass. 215 (1999). Where the law of another jurisdiction governs, we have expressed our "doubt that any attempt on our part to reform it would

swered the complaint, and they were therefore defaulted in the trial court. The judge nevertheless stated that the requested relief would not adversely affect the Mecilis' interests in either estate.

[4]Concetta moved for appointment of a guardian ad litem because of the "lack of an answer or response from Agnes Mecili or Thomas Mecili" and the "complexity of the issues presented and the difficulties it presents to the surviving sister in light of her dual role." The motion was allowed and the guardian ad litem, after investigation, did not object to the requested relief.

be binding on the Federal taxing authorities." *State St. Bank & Trust Co.* v. *Alden, supra,* citing *Commissioner of Internal Revenue* v. *Estate of Bosch,* 387 U.S. 456, 465 (1967). Thus, "[i]n the absence of anything to indicate that a reformation by us would be anything other than futile," *State St. Bank & Trust Co.* v. *Alden, supra,* we have declined to grant relief in this type of case. *Id.* See *Mazzola* v. *Myers,* 363 Mass. 625 (1973).

Applying these principles to this case, we address the accounts located in Massachusetts at the time of Mary's death separately from the one located in Florida.

*Massachusetts accounts.* According to the record before us,[5] when she died, Mary owned two bank accounts at the Cambridge Savings Bank. Both accounts were opened at a Cambridge branch of the bank on October 25, 1999, less than one year before Mary's death. While the parties filed a "stipulation as to all material facts," including that Mary and John were listed as joint owners of the accounts, and although John's name appears in the address field of certain account statements and "advice of withdrawals," this does not establish that either account was in fact a joint account. Significantly, a registration card for one of the accounts indicates that it is a "personal account" and lists only Mary's name. Only Mary signed the card, and only her Social Security number is listed. Indeed, the bank's keeper of the records has indicated that the bank does "not have anything in the name of John A. Palmieri," and there is no assertion by the bank that the accounts were joint accounts. On this record, therefore, it appears that the accounts are not in fact joint accounts and the relief sought with respect to the Massachusetts accounts is not necessary.

*Florida account.* With respect to the Florida account, the record indicates that the account was opened at a bank branch in Jacksonville, Florida, on April 11, 1994. Notably absent from the record are copies of the depositor's contract or agreement governing the account, and the account signature card.[6] Unlike Massachusetts, Florida has a statute governing choice of law in connection with bank accounts. Fla. Stat. Ann. § 655.55 (West 1992).[7] See *Sanchez* v. *Sanchez de Davila,* 547 So. 2d 943, 945 (Fla. Dist. Ct. App. 1989) (it is "well settled" in Florida that the disposition of a joint bank account "is governed by the law of the situs of the account regardless of the domicile of

---

[5]The appellate record includes various bank records provided by counsel, at our request, concerning the creation of the three accounts.

[6]Mary's 1996 and 1997 tax returns list a Jacksonville, Florida, address, and certain bank statements list the same Florida address through March, 1999. The first reference in the record to a Massachusetts address for Mary is approximately one year before her death.

[7]Section 655.55 of Fla. Stat. Ann. (West 1992) provides: "The law of this state, excluding its law regarding comity and conflict of laws, governs all aspects, including without limitation the validity and effect, of any deposit account in a branch or office in this state of a deposit or lending institution, including a deposit account otherwise covered by § 671.105(1), regardless of the citizenship, residence, location, or domicile of any other party to the contract or agreement governing such deposit account, and regardless of any provision of any law of the jurisdiction of the residence, location, or domicile of such other party, whether or not such deposit account bears any other relation to this state, except that this section does not apply to any such deposit account . . . (b) To the extent that all parties to the contract or agreement governing such deposit account have agreed in writing that the law of another jurisdiction will govern it."

any party to the account"); Annot., Conflict of Laws as to Disposition of and Relative Rights to Bank Deposits in the Names of More than One Person, 25 A.L.R.2d 1240, 1241-1242 (1952) ("The courts seem to agree that title to and rights in a bank deposit standing in the names of the depositor 'and' another is governed by the law of the place where the deposit has been made and the account is kept"). But see *Estate of Blake*, 856 A.2d 1151 (D.C. 2004) (applying law of decedent's domicil, rather than law of estate where account opened, where District of Columbia had substantially adopted Uniform Nonprobate Transfers on Death Act, 8B U.L.A. 191 [Master ed. 1993 & Supp. 2005]).[8] In these circumstances, we are not persuaded that Massachusetts law applies to the determination of ownership of the funds in the Florida account.

*Conclusion.* Because the record does not permit us to conclude that the Massachusetts accounts are in fact joint accounts, as alleged, it appears that the relief sought is not necessary. With respect to the Florida account, we are not persuaded that Massachusetts law applies to the ownership determination, and decline to grant the requested relief. See *State St. Bank & Trust Co.* v. *Alden, supra* at 1012 (declining reformation where futile). Accordingly, we remand the case to the Probate and Family Court for entry of a judgment dismissing the complaint without prejudice.

*So ordered.*

*M. David Blake* (*Carolyn Martello* with him) for the plaintiff.

---

[8]Massachusetts has not adopted, in relevant part, the Uniform Nonprobate Transfers on Death Act, 8B U.L.A. 191 (Master ed. 1993 & Supp. 2005).

