STANLEY BARBOZA & another,[1] administrators,[2] *vs.* ANDREW McLEOD.

Bristol. May 4, 2006. - August 18, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Choice of forum. *Joint Tenants. Personal Property,* Joint tenancy. *Evidence,* Intent.

This court concluded that the law of a joint bank account's situs governed the issue of the ownership of the proceeds of the account, which had been established by a decedent in California before she had died in Massachusetts [472-473]; where the plaintiffs in an action in equity failed to establish by the requisite clear and convincing evidence that the decedent did not intend the proceeds of the account to go to the defendant on her death [473-475], and where the judge erred in admitting certain evidence [475-477], this court vacated the judgment for the plaintiffs and dismissed the underlying complaint.

COMPLAINT filed in the Bristol Division of the Probate and Family Court Department on April 1, 2004.

The case was heard by *Elizabeth O. LaStaiti,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*David Berman* for the defendant.

*Donald H. Barnes, Jr.,* for the plaintiffs.

IRELAND, J. We granted the defendant's application for direct appellate review to determine whether the law of a joint account's situs governs ownership of the proceeds of the joint bank account, where the decedent established the joint account in another State and died in Massachusetts. At the time of her death, the decedent, Helen M. Zaborowski (decedent), held the joint account in a California credit union in her name and in the name of her nephew, the defendant, Andrew McLeod. The joint

_____

[1] Robert Barboza.

[2] Of the estate of Helen M. Zaborowski.

account named the decedent and the defendant as "joint own-er[s] with right of survivorship." Shortly after the death of the decedent, the defendant contacted the California bank, withdrew the funds in question, and closed the joint account.

The plaintiffs, Stanley Barboza (Stanley) (decedent's brother) and Robert Barboza (Robert) (Stanley's son), administrators of the decedent's estate, filed a complaint in equity in the Probate and Family Court, arguing that, pursuant to Massachusetts law, the funds belong to the estate. The case was tried without a jury, and a judge in the Probate and Family Court entered a judgment ordering the defendant to relinquish the money to the estate for administration by the plaintiffs.

Because we conclude that California law applies to determine whether the proceeds of the joint account are nonprobate assets belonging to the defendant, that the plaintiffs have failed to establish by clear and convincing evidence that the decedent did not intend the proceeds of the joint account to go to the defendant on her death, and that the judge erred in admitting certain evidence, we vacate judgment for the plaintiffs and dismiss the underlying complaint.

*Standard of review.* In nonjury cases, findings of fact shall not be set aside unless clearly erroneous. Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976), quoting *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). "On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts. . . . Thus, the 'clearly erroneous' standard of appellate review does not protect findings of fact or conclusions based on incorrect legal standards." (Citations omitted.) *Kendall* v. *Selvaggio*, 413 Mass. 619, 621 (1992).

*Facts.* We summarize the essential facts as found by the judge that, aside from the ultimate question whether the decedent intended a gift to the defendant of an interest in the

joint bank account, are supported by the record. We reserve certain facts for our discussion of the issues.

The decedent grew up in the East Boston section of Boston with two sisters and her only brother, Stanley. In the 1940's, the decedent married Ralph Zaborowski and moved with him to California. During her time in California the decedent maintained a close relationship with her nephew, the defendant, and when the defendant attended college for a short time on the west coast, she assisted him with obtaining a summer job. Throughout the years, the decedent also remained close to Stanley, exchanging letters and telephone calls, and visiting him in Massachusetts.

In 1966, the decedent opened a bank account in California in her name. Years later, in 1981, she added her husband Ralph's name to the account as a joint owner with right of survivorship. Ralph passed away in 1994, and the decedent requested that the defendant fly from Massachusetts to California to comfort her and assist her with preparing her late husband's funeral arrangements. While the defendant was in California, the decedent asked him to sign a signature card so that he could be added to the bank account at issue in this case. The defendant signed the card and shortly thereafter the decedent removed Ralph's name from the account and added the defendant's name to the account as a joint owner with right of survivorship. After Ralph's passing, the decedent moved back and forth between California and Massachusetts. She eventually settled in Dartmouth, where she died intestate on June 12, 2003. At the funeral the defendant delivered the eulogy.

The defendant testified that in the years between the time he was added to the account and the decedent's death, he never contributed any money to the account, never received statements, and never managed the account, nor ever asked to do so. During the decedent's lifetime, the defendant also did not hold an automatic teller machine card for the account, and he never attempted to withdraw money from the account. On one occasion, however, he asked the decedent if he could have some money from the account and he was told that the funds were "not available." The decedent may have also stated that the account was closed.

Stanley testified that he had discussed the account with the decedent two months after her husband died and while she was still living in California. He testified that the decedent stated that she had put the defendant's name on the account, but that she did not mean it as a gift; she "just wanted someone to help out in case of an emergency." Another witness, Elizabeth Willett, who cleaned the decedent's Massachusetts home for many years, testified that, about six months prior to the decedent's death, in the course of a conversation about a will, the decedent mentioned that the defendant was her favorite and that she had "something" for him. Willett met the defendant for the first time at the decedent's wake, and at that time, she told the defendant about the decedent's intent to give him something.

Shortly after the decedent's passing, as the defendant was looking through the decedent's personal papers at her home, he learned that the account was still open. He then consulted an attorney, who advised him that the remaining funds in the account belonged to him. The defendant contacted the credit union, withdrew approximately $142,000, and closed the account. When negotiations regarding the funds failed, the plaintiffs requested, and were granted, a temporary restraining order enjoining the defendant from using the proceeds of the account during the pendency of this action.[3]

At trial, the plaintiffs produced copies of documents found in the decedent's personal effects. Among the documents were two account statements from the California credit union; an Internal Revenue Service (IRS) interest reporting form; and a putative draft will. The account statements were addressed to the decedent at her Massachusetts address and included information regarding the amount of interest earned on the account. They contained both the decedent's and the defendant's names, but the defendant's name had been scratched out by hand. The IRS form bore a similar handwritten redaction. At the top of the putative draft will was written, "I do hereby bequeath (without reservation) my earthly belongings to the following." Below this statement was a list of the decedent's loved ones. Beside each name was a dollar amount, and next to the defendant's

[3]Prior to trial, a preliminary injunction issued with the same language as the temporary restraining order.

name was "100,000." This bequest and the $100,000 bequest to the decedent's brother, Stanley, are the largest bequests listed in the putative draft will.

*Discussion.* 1. *Choice of law applicable to joint account.* "It is a familiar rule of law that the right of succession to the estate of a deceased person, whether he leaves a will or dies intestate, depends upon the law of his domicil." *Rackemann* v. *Taylor,* 204 Mass. 394, 397 (1910). Here, it is undisputed that the decedent's domicil was Massachusetts, but that does not resolve whether Massachusetts law or the law of the location of the bank account, California, applies. In determining the issue of ownership of the account, the judge applied Massachusetts law, which provides that a representative of the estate of the deceased may show, by a preponderance of the evidence and in light of the attendant facts and circumstances, that at the time the joint account was established, the deceased did not intend to make a present completed gift of a joint interest in an account. *Miles* v. *Caples,* 362 Mass. 107, 114 (1972). *Egan* v. *Deely,* 361 Mass. 886, 887 (1972), citing *DePasqua* v. *Bergstedt,* 355 Mass. 734 (1969).

The defendant, citing authority from several jurisdictions, argues that the question of ownership of the account should be governed by the law of the situs of the deposit, and therefore, California law should apply to determine whether the decedent intended to grant the defendant an interest in the joint account. As discussed *infra,* California law provides that funds in a joint account belong to the surviving party unless there is clear and convincing evidence of a different intent. There is no case law in Massachusetts that directly addresses this choice of law issue. See *Florio* v. *Florio,* 445 Mass. 1004, 1006-1007 (2005) (noting that Florida choice of law statute would appear to govern issue which law determines ownership of joint account, but declining to grant relief where scant documentation of decedent's domicil and without account agreement). We conclude that the law of a joint account's situs at the time of a decedent's death should apply to determine ownership of the account.[4]

Substantial case law from other jurisdictions supports our

---

[4]Based on our conclusion that California law applies to this proceeding, we

conclusion. See, e.g., *Barstow* v. *Tetlow*, 115 Me. 96, 98 (1916); *Tyler* v. *Suburban Trust Co.*, 247 Md. 461, 468 (1967); *Matter of the Estate of Kugel*, 192 Misc. 61, 63 (N.Y. Sur. Ct. 1948). Our conclusion also is consistent with our existing rule regarding the disposition of real estate located outside the Commonwealth. See *Rackemann* v. *Taylor, supra* at 397 ("If [the decedent] owns real estate in another State or country, that is, of course, subject to the local laws of the place where it is situated . . . ."). In addition, California has a substantial interest in ensuring the proper adjudication of joint accounts opened within its borders. Moreover, the record in this case supports the inference that the decedent intended the account to be subjected to the benefits and burdens of California law. Based on the documents and testimony submitted it is clear that, up until her death, the decedent retained her mental acuity, lived independently, and ably managed her personal affairs. Until her death, she continued diligently to maintain the account in California.

2. *Disposition of the joint account.* At oral argument, the plaintiffs conceded that all of the evidence concerning ownership of the account had been presented below. Therefore, in the interest of judicial economy and efficiency, and to prevent unnecessary additional litigation for this family, we stand in the shoes of the trial court and decide the matter on the record before us. See *Commonwealth* v. *Leventhal*, 364 Mass. 718, 723 (1974); G. L. c. 215, § 28.

The applicable provision of the California Probate Code provides, in relevant part:

> "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent."

Cal. Prob. Code § 5302(a) (West 1991 & Supp. 2006). " 'Clear and convincing' evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt.

need not address the defendant's additional argument that Massachusetts law with respect to ownership of joint accounts should be altered to require a clear and convincing standard of proof.

It must be sufficiently strong to command the unhesitating assent of every reasonable mind." *In re David C.*, 152 Cal. App. 3d 1189, 1208 (1984). The burden of proof is on the party "seeking to show that the transaction is not to be taken at face value." *Blanchette* v. *Blanchette*, 362 Mass. 518, 524 (1972). The admissible evidence presented by the plaintiffs does not rise to the level of clear and convincing.

The documents the plaintiffs produced do little to illuminate the issue. The putative draft will found in the decedent's home contains an itemized list of gifts to be given to her loved ones on her death. She lists the defendant, and none of her other nieces or nephews, as a beneficiary to receive $100,000. We think this fact militates against the plaintiffs and supports the defendant's argument that the decedent intended to give the defendant the proceeds of the account, approximately $142,000, on her death. The meaning of the putative draft will, of unknown origin and date, is unclear, and the fact of its existence does not advance the plaintiffs' position.

Further, the various redactions on the IRS forms and bank account statements, assuming they were made by the decedent, could reflect the decedent's desire not to subject the defendant to tax liability, and not necessarily her desire to remove the defendant as a joint owner of the account. The fact that the decedent was familiar with adding and removing names from her California joint bank account, as indicated by the prior removal of her late husband and the addition of the defendant to the account, makes the latter possibility less likely. In any case, by no means is it clear and convincing that the redactions were made to eviscerate the defendant's joint interest in the account.

We turn to the testimony of Elizabeth Willett, the decedent's long-time house cleaner and a hostile witness called by the defendant. Willett claimed that, during a conversation with the decedent about making a will, the decedent stated that the defendant was her favorite and that she had "something" for him. The facts tend to support this statement, because the defendant delivered the decedent's eulogy. The conversation could be interpreted in any number of ways, none of which clearly and convincingly evinces the decedent's intent not to leave her nephew the proceeds of the account.

Finally, as discussed in the law revision commission comments to the 1990 enactment of Cal. Prob. Code § 5302, there are many ways the decedent could have rebutted the right of survivorship, but she did not. For example, she could have explicitly established the account as a joint account with "no survivorship rights." However, the account expressly granted to the defendant a joint interest in the account with a "right of survivorship." The decedent retained this designation long after her domicil had changed to Massachusetts and when, presumably, based on the facts in the record, she was capable of changing the designation on the account or closing the account and moving the entire proceeds of the account elsewhere. Given that the plaintiffs have not illustrated by clear and convincing evidence the decedent's contrary intent, we must presume she intended her nephew to remain the joint owner of the account, with a right of survivorship. The proceeds of the account belong to the defendant, not to the estate.

3. *Admissibility of statements of decedent.* The defendant also argues that the judge erred in admitting statements of the decedent, made after the defendant's name was added to the joint account with a right of survivorship, indicating her intent not to give the defendant a joint interest in the account. We agree, and those statements have not been considered in the above analysis whether the plaintiffs produced the requisite clear and convincing evidence.

In the proceedings below, the defendant filed a motion in limine to prevent the admission of these statements, and the motion was denied. In the judge's memorandum of decision, citing *Desrosiers* v. *Germain,* 12 Mass. App. Ct. 852, 857-858 (1982), she concluded, "[a] decedent's statements made subsequent to the creation of a joint account may be admissible as relevant evidence of the decedent's donative intent." Thus, as reflected in the findings of fact, the judge admitted two hearsay statements of the decedent: her alleged statement to the defendant that the account "was not available to him and that the account was closed," and her alleged statement to Stanley that she did not intend to

have the defendant's name on the account as a gift, but for an emergency situation.[5]

The well-settled evidentiary rule that "a grantor or assignor cannot defeat his own deed or assignment by declarations made after it has taken effect," *Kimball* v. *Leland*, 110 Mass. 325, 327 (1872), applies in this case. See *DePasqua* v. *Bergstedt, supra* at 736 (noting that *Kimball* v. *Leland, supra,* has been cited "in support of the proposition that evidence of the nature admitted here is not admissible to defeat the title of the survivor to a joint account").

The judge's reliance on the *Desrosiers* case is misplaced. In the *Desrosiers* case, sufficient evidence existed to show that the decedent lacked donative intent when she added her daughter's name to the account. The Appeals Court assumed, without holding, that subsequent statements made by the decedent would have been inadmissible to show the decedent's initial intent; however, the court determined that the subsequent statements of the decedent were admissible for the purpose of showing whether the decedent's intent to create a gift in the joint account arose after the account was created. *Desrosiers* v. *Germain, supra* at 858. The key point in time, under the analysis employed in the *Desrosiers* case, is the inception of the joint account. See *DePasqua* v. *Bergstedt, supra* at 737 (proffered evidence "insufficient to rebut the donative intent implicit in the creation of the joint account").

Here, there was sufficient evidence to show that when the decedent added the defendant's name to the joint account she intended to make a gift of a joint interest in the account. The record indicates that the decedent understood the ramifications of her behavior and that expressly designating the account as a joint account with a right of survivorship would result in a gift to the defendant. Therefore, because the decedent's donative intent was clearly established at the time of the creation of the

---

[5]The defendant also argued that the various redacted documents should have been excluded from the evidence presented at trial; however, it is unclear, based on the testimony at trial, whether the redactions were made by the decedent, and even if they were, the redactions were not necessarily contrary to the defendant's right of survivorship (see *supra*). Therefore, we assume, without deciding, that they were properly admitted, and we consider them a part of the record.

joint account, the subsequent statements attempting to defeat that gift were not admissible. *DePasqua* v. *Bergstedt, supra.*

*Conclusion.* For the reasons set forth above, we vacate the judgment for the plaintiffs and dismiss the underlying complaint with prejudice.[6]

*So ordered.*

---

[6]Pursuant to G. L. c. 215, § 45, the defendant requested costs and attorney's fees in connection with this appeal to be paid by the plaintiffs out of the funds of the estate. We defer action on his request until defense counsel submits the appropriate documentation in support of this request and we review any material the plaintiffs may choose to submit in opposition. See *Fabre* v. *Walton*, 441 Mass. 9, 10 (2004). An award under § 45 is a matter of discretion ("in the discretion of the court," to be paid "as justice and equity may require"), not a matter of right. Accordingly, the parties' submissions should address not only the amount of any requested costs and attorney's fees, but also how we should exercise our discretion with respect to allowing or denying the request.