Welch, J.
Plaintiffs Chad Ward and Karen Ward (“tenants”) brought this action to recover damages against their former landlord, defendant Kevin Gaffny (“landlord”) , for his breach of the warranty of habitability and violation of G.L.c. 93A. After a jury-waived trial, the judge found in favor of the tenants, and assessed $7,731.32 in damages, $8,190.40 in attorney’s fees, plus interest and costs, for a total of $17,129.08.[2] The landlord filed this appeal.
The trial judge’s Mass. R. Civ. P., Rule 52(c), findings of fact, supported by evidence adduced at trial, indicate that on February 20, 2009, the tenants entered into a written agreement to lease the residential premises at 10 Heritage Drive in Bourne, Massachusetts. The lease term was for a period of one year beginning on March 1, 2009, with a monthly rent of $1,400.00. The tenants paid an additional $1,400.00 as the last month’s rent. In a written addendum to the lease, the landlord agreed to provide “working heat in the back bedroom.” Prior to the tenants assuming occupancy, a number of e-mails were exchanged between the parties in which the landlord acknowledged, inter alia, that the heat was not working and that there were electrical wiring problems in the kitchen and the bathroom.
On May 6, 2009, the deputy fire chief, David Cody (“Cody”), was called to the house and was shown a light that was glowing orange even though the switch for the light had been turned off. There were scorch marks around the light fixture. A review of the circuit panel showed that no circuits had been tripped and that the circuits were incorrectly marked. After Cody reorganized the electrical panel, the power switch to the scorched area was identified and turned off. Cody noticed a smell that in his opinion was consistent with “electrical burning.” It was also observed that switching on the light in the hallway turned on the lights in the kitchen.
At Cody’s recommendation, the tenants notified the landlord of the electrical issues. The landlord authorized the hiring of Robert Scena (“Scena”), a friend of the tenants and a licensed journeyman electrician, to make the electrical repairs. On May 7, 2009, Scena inspected various areas in the premises and noted multiple issues with the electrical system, including the inability to trace certain wires behind *136 the walls and an unconnected thermostat in the child’s bedroom. Although the only-way to ensure that the electrical wiring was safe was to look behind the walls, the landlord would not allow the wiring behind the walls to be inspected. He authorized only so much of the work as related to the scorched light. Scena submitted an application for an electrical work permit that identified the work to be done but that specifically noted, “[o]ther problems not addressed.”
On May 29, 2009, Scena met at the premises with Cody and the town wiring inspector, Edward Eacobbaci (“Eacobbaci”), to obtain approval of the work he had completed. Inspector Eacobbaci found numerous violations, and also noted there had been no electrical permit requests to the town for the landlord’s renovation of the property prior to the tenants’ arrival. During this meeting, there was a discussion of the same electrical issues that were present on May 7, 2009, including the inability to know the condition of the wiring without opening a wall to view it. Eacobbaci deemed the electrical system to be a fire hazard. Cody then informed the tenants that the heat and electricity in the house would be shut off, and that they would have to move out of the property. The tenants did so, and this lawsuit eventually ensued.
Although not included in the appendix prepared and filed by the landlord on this appeal, requests for findings of fact and conclusions of law pursuant to Mass. R. Civ. E, Rule 52(c), were apparently filed by both parties in this jury-waived case.[3] The trial judge responded appropriately with a written decision setting forth her findings and rulings. Thus, the dispositive question on this appeal is whether the court’s findings were “clearly erroneous.” Cardoza v. Cardoza, 2006 Mass. App. Div. 137, 138. Findings of fact are clearly erroneous when they “cannot be substantiated ‘on any reasonable view of the evidence, including all rational inferences of which it was susceptible.’” Mark Moore Homes, Inc. v. Tarvezian, 1998 Mass. App. Div. 171, 173, quoting T.L. Edwards, Inc. v. Fields, 371 Mass. 895, 896 (1976). In reviewing the trial court’s findings, we neither “weigh” the evidence de novo, Lundgren v. Gray, 41 Mass. App. Ct. 451, 457 (1996), nor substitute our judgment for the trial court’s assessment of the credibility of the witnesses. 31-35, LLC v. Zucco, 2008 Mass. App. Div. 14, 16. Ultimately, a finding of fact will be deemed clearly erroneous only “when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Marlow v. City of New Bedford, 369 Mass. 501, 508 (1976), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). See ¿so Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 637 (2010), quoting Kendall v. Selvaggio, 413 Mass. 619, 620-621 (1992); Barboza v. McLeod, 447 Mass. 468, 469 (2006). It should be noted, however, that the clearly erroneous standard “does not protect findings of fact or conclusions based on incorrect legal standards.” Kendall, supra at 621. See also Barboza, supra.
Applying these principles to the case before us, we conclude that there was no error in the trial court’s findings and rulings. There is no merit in the landlord’s principal argument that he cannot be held strictly liable in this case for any breach of the warranty of habitability because “the statute [G.L.C. 186, §14] and law do not impose *137 a one way obligation on the Landlord to ensure that a rental meets the standards at law regulating the livable conditions at a rental home.” Stated alternatively, the landlord’s mistaken contention is that he is not liable because the tenants failed to notify him of any defect and to permit him to remedy it. The trial evidence, however, clearly contradicts the landlord’s assertion that he did not receive notice or had no knowledge of the safety issues in the leased premises.[4] Further, and of greater significance, is that the landlord’s argument ignores the elementary point that it is the landlord’s dufy at the commencement of the tenancy to provide a tenant with premises free from conditions that would endanger or materially impair the health or safety of the tenant. See Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 197-199 (1973).[5] Where the evidence establishes that leased premises were uninhabitable from the inception of the tenancy, damages run from that time without the necessity of showing that the landlord knew of the defects affecting habitability. McKenna v. Begin, 3 Mass. App. Ct. 168, 173-174 (1975). The obligation of the landlord to provide a safe and habitable dwelling at the inception of the tenancy is codified in 940 CMR §3.17(1), which states:
(1) Conditions and Maintenance of a Dwelling Unit. It shall be an unfair or deceptive act or practice for an owner to:
(a) Rent a dwelling unit which, at the inception of the tenancy
1. contains a condition which amounts to a violation of law which may endanger or materially impair the health, safety, or well-being of the occupant; or
2. is unfit for human habitation;
(b) Fail, during the terms of the tenancy, after notice is provided in accordance with M.G.L.C. 111, §127L, to
1. remedy a violation of law in a dwelling unit which may endanger or *138 materially impair the health, safety, or well-being of the occupant, or
2. maintain the dwelling unit in a condition fit for human habitation; provided, however, that said violation of law was not caused by the occupant or others lawfully upon said dwelling unit.
Assuming the conditions precedent, a violation of 940 CMR §3.17(1) does impose strict liability on the landlord. And pursuant to that regulation, a breach of the warranty of habitability constitutes an unfair and deceptive act in violation of G.L.c. 93A.
The trial judge set forth in her opinion detailed findings of fact that are amply supported by the record and predicated on correct law. The evidence warranted the findings that the landlord knew of the condition of the premises, most notably the faulty wiring, at the inception of the tenancy; and that after being further advised, the landlord refused to permit the recommended repairs advocated by Scena. The result was that heat and electricity to the premises were shut off, and the tenants were constructively evicted. The findings of fact support the conclusion that the landlord breached the warranty of habitability and violated G.Lc. 93A. There was no error.
Judgment affirmed.
So ordered.

 The trial judge also found in favor of the tenants on the landlord’s counterclaims for breach of the lease and waste.

The trial judge noted the filings in her written decision, and the trial court docket indicates the same.

 As indicated, the tenants notified the landlord by telephone of the light scorching and smell of burnt electric wiring that was confirmed by Cody, the deputy fire chief. The landlord was also informed of the results of Scena’s subsequent inspection of the premises and his conclusion that it could not be determined whether the wiring were up to code unless the wiring behind the walls was examined. The landlord refused to authorize this work. Further, there was evidence that the landlord had not obtained permits for electrical work done before the tenants took occupancy of the premises, and that the landlord admitted to the tenants at that time that there were heat and wiring problems. Only two months into the tenancy, numerous electrical code violations were found by Eacobbaci, the town wiring inspector; and he and Cody concluded that the wiring posed a fire safety hazard. Habitability is concerned with the provision, maintenance, and repair of the physical facilities vital to the use of the premises. See Doe v. New Bedford Hous. Auth., 417 Mass. 273, 279-284 (1994). Certainly, safeguarding the premises against electrical fires is essential to use of the premises from the outset and, thus, to habitability.

 See Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 200, 202 (1979) (liability for breach of warranty of habitability, sounding in contract, may exist even when landlord is not at fault and has no reasonable opportunity to repair).