NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1182

J.K.S.

vs.

D.S.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this appeal from a judgment of divorce nisi, D.S.S. (husband), the former spouse of J.K.S. (wife), challenges the property division favoring the wife.  He argues that the judge (1) adopted verbatim an excessive number of the wife's proposed findings of fact, (2) erroneously assigned no value to the wife's term life insurance policy, (3) erroneously allowed the wife to introduce illegally obtained and improperly authenticated evidence, and (4) failed to consider all the relevant factors and thus ordered a property division that was plainly wrong and excessive.  We affirm.

Background.  The parties were married in June 1988, had three children together during the marriage (all of whom were

adults at the time of trial), and separated in January 2019. The wife filed a complaint for divorce a few months later. The wife's health began to decline during the marriage. At the time of trial, she was fifty-seven and described herself as wheelchair bound. She resided in an assisted living facility and suffered from serious health problems, including multiple sclerosis (MS) and several types of cancer (then in remission). The judge found that she was fully disabled and had no future ability to earn income or acquire assets.

The husband was fifty-six at the time of trial. In 2008, he began soliciting prostitutes, of whom he patronized about 200 during the period 2011-2014 alone. He became financially entangled with certain of the women, including by making substantial loans to them. Because of these financial relationships, he was ultimately charged with various Federal crimes. He entered into a plea agreement and completed all but the supervised release portion of his sentence in 2021.

The judge divided the marital estate unevenly, in favor of the wife. He awarded sixty percent of the retirement assets to the wife and about seventy-three percent of the nonretirement assets to the wife. The judge's rationale cited, among other things, the wife's severe health issues, inability to support herself, and extensive living expenses, i.e., the fees charged by her assisted living facility. The judge acknowledged that

2

the husband's earning prospects were limited by his status as a convicted felon.  The judge gave considerable weight, however, to the impact of the husband's conduct during the marriage in depleting the marital estate.  This included his "avoid[ance of] gainful employment from 2013 onward," and his dissipation of over $1 million in marital funds, comprised of about $700,000 on prostitution, related travel, and bad loans, and nearly $500,000 on his criminal defense and forfeiture.

Discussion.  1.  Adoption of proposed findings of fact. The husband first argues that the judge adopted so many of the wife's proposed findings of fact that we should scrutinize his findings more strictly than under the "clearly erroneous" standard prescribed by Mass. R. Dom. Rel. P. 52 (a).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Barboza v. McLeod, 447 Mass. 468, 469 (2006), quoting Marlow v. New Bedford, 369 Mass. 501, 508 (1976).  But "stricter scrutiny may be warranted in cases where the judge's findings fail to evidence a badge of personal analysis" (quotation omitted).  Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Department of Mental Retardation (No. 1), 424 Mass. 430, 451 (1997).  We are not persuaded.

After a nine-day trial, the wife submitted 512 proposed findings, the husband submitted 1,101, and the judge made 767 findings. The husband claims that of the wife's proposed findings, the judge adopted "[576] sentences verbatim, or nearly verbatim, and incorporated them into [425] of his findings." The husband does not explain or provide the data underlying these sweeping assertions, and we decline to undertake such a line-by-line comparison ourselves. Instead, the husband provides a few examples of what he claims are clearly erroneous findings adopted from the wife that were prejudicial to his position on division of the marital estate.

The husband has not shown that the indicia of independent judicial analysis are absent here. See Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 465 (1991) (findings are product of judge's independent judgment where judge deleted specific language from submissions, incorporated some of opposing counsel's proposed findings, and drafted findings and conclusions of his own). Even if findings are recited verbatim from a party's proposal, they are "not to be rejected out-of-hand, and they will stand if supported by evidence" (quotation omitted). Care & Protection of Olga, 57 Mass. App. Ct. 821, 823-824 (2003). Moreover, the judge's careful and detailed eleven-page rationale "recited his own consideration of the evidence and of the consequences that, in his view, the evidence

4

commanded." Id. at 824. That the judge did not adopt as many of the husband's 1,101 proposed findings as the husband might wish, including his 136 proposed findings on the wife's alleged misconduct and dissipation, does not evince lack of independent judgment.

Our conclusion is confirmed by our review of the specific examples the husband cites to support his claim. The husband's first example is the judge's finding 406, which appears identical to the wife's proposed finding 169. The sole flaw the husband cites in this detailed, four-sentence finding is that the judge found the wife created a revocable trust in 2019 after, rather than before, funds from the husband's mother's estate were deposited in the parties' joint checking account. Although the single word "thereafter" in the judge's finding appears clearly erroneous, the husband fails to persuade us that there was anything nefarious about the timing of these events, which occurred after the parties separated, or that the judge's error had the slightest effect on the property division. The husband argues that the wife's deposit of her mother-in-law's estate proceeds into the revocable trust "turned what might have been claimed as [the husband's] individual asset into a 'marital asset.'" But it does not appear the husband argued to the judge that the estate proceeds should be treated as his alone. Nor does he explain how the timing of what he characterizes as the

5

wife's secret scheme prevented the judge from awarding the value of those funds to him, if doing so were otherwise equitable. The judge was empowered to "assign to either husband or wife all or any part of the estate of the other." G. L. c. 208, § 34. The judge's one-word error, on a matter of little if any importance to the ultimate property division, is an insufficient basis to subject the judge's findings as a whole to more searching scrutiny.

The husband next points to the judge's findings 443 through 449, which, like the wife's proposed findings 183 through 186, refer to a certain Fidelity charitable account as "Giving Grace II," when the account's correct name was "Given Grace II." Again, such a minor error on a matter of no significance to the ultimate property division does not cause us to question the judge's findings as a whole.

The husband also cites the judge's findings 443 and 444, which, like the wife's proposed finding 183, state that "the parties" opened and funded the Fidelity charitable account. The husband argues that he alone opened and funded the account, yet he fails to show that the judge's contrary findings are clearly erroneous. At trial the husband testified (with emphasis added) that "we opened it in 2000"; "we then called [it] Given Grace II"; upon the sale of his business in 2012, "we received about three million for our household, and I put 300,000 into the

6

. . . account"; and, "we had put other money in before then." The wife testified to the same effect.  The husband further testified that, as of the time he began to serve his sentence, "we had given away . . . up to around 220,000."[1]

Not only do the husband's challenges to these findings fail, his claim in his brief that those findings led the judge to "award[] the entirety of the Given Grace II account to [the wife]" is, intentionally or not, significantly misleading to this court.  It is undisputed that the parties could not withdraw funds from the account for their own use; their rights were essentially limited to directing how the funds were invested and requesting that Fidelity make donations from the account to particular charitable organizations.  It is also undisputed that Fidelity revoked the husband's rights in the account in January 2020, and that what the judge awarded the wife was not the value of the account for her own use but only

---

[1] The husband also challenges the judge's finding 449, parallelling part of the wife's proposed finding 185, that the wife changed the password on the account because the husband could no longer participate in it.  Fidelity terminated the husband's rights regarding the account in January 2020.  Although the husband cites evidence that his password was "blocked on May 21, 2019," and "re-established on May 23, 2019," even if it were the wife who caused those actions, that would not contradict the judge's finding regarding the password change in January 2020.  We add that the husband fails to explain how this issue is of any significance to the judgment.

the continued and sole right to request that Fidelity make particular charitable donations from it.

Finally, the husband claims that the judge's findings 330, 331, 332, and 676 regarding the husband's work history and income in 2014-2016 -- adopting the wife's proposed findings 147, 148, 149, and 279 -- are internally inconsistent. We reject this argument. The judge's finding that the wife believed the husband worked on only one consulting job in 2014 does not imply that the husband did no such work in 2015 or 2016, and the judge found that he did do some such work, although the amounts he earned were small.[2] The husband's claim on appeal that the judge "came to the wrong conclusion that husband failed to earn income during that time" is baseless.

In sum, the husband has not identified any finding on any material issue that was clearly erroneous. Nor has he shown that the judge, in making those findings, failed to exercise independent judgment.

2. Wife's life insurance policy. The husband argues that the judge erred in assigning no value to the wife's term life insurance policy, thereby rejecting the husband's actuary's

_____

[2] Thus, unlike the husband, we see no error in the judge's finding 326, mirroring the wife's proposed finding 146, that the husband "has been voluntarily unemployed or underemployed since September 2013."

8

testimony that the present value of the policy was $845,000. After oral argument, we directed the judge to clarify certain of his findings regarding this issue. The judge did so promptly and in detail, and the parties accepted our invitation to file supplemental memoranda addressing the revised findings.[3]

The heart of the matter is revised finding 430 -- that the evidence "has not . . . established" that "there is a market to purchase" the policy.[4] The judge found that the husband's actuary "did not provide any credible evidence that there are prospective buyers of term life insurance policies," and that, although the husband "stated that he spoke with multiple companies that have an interest in purchasing life insurance from patients with MS, no further information, nor credible evidence, was provided to support this proposition." This was

---

[3] Although the husband criticized the judge's original findings on this issue tracking those the wife proposed, the revised findings are plainly the product of the judge's independent judgment. The husband maintains that the judge's revised finding 435, in referring to the American Academy of Actuaries rather than the Society of Actuaries, retains an error originally adopted from the wife's proposed finding 498. Yet neither the judge's original nor his revised finding 435 refers, even implicitly, to the American Academy of Actuaries. Revised finding 435 is clear and fully supported by the actuary's testimony.

[4] We are unpersuaded by the husband's claims that the judge, in revising finding 430, exceeded the scope of our order for clarified findings, and that the revised finding "inadvertently acknowledge[es]" that the wife has the option to sell the policy.

9

echoed in revised finding 437 -- "no prospective market has been identified."  These findings were fully supported by the evidence, and we defer to the judge's credibility determinations.  See Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995).

With the wife having no proven ability to sell the policy, the parties' disagreement about its value if it could be sold, and the accuracy of the judge's findings on that issue, are beside the point.  The judge's revised finding 437, that the value of the policy was "$0.00," is supported by the wife's financial statement, and is not clearly erroneous.

3.  Evidentiary issue.  The husband argues that the judge erroneously allowed the wife to introduce evidence that was illegally obtained and improperly authenticated.  The illegality claim would fail even if we were to accept for purposes of argument the husband's assertion -- unsupported by the transcript citations he provides -- that the "[wife's] counsel admitted accessing numerous [electronic] files without [the husband's] knowledge or permission."  The claim fails because the husband has not identified either (1) what law was violated by counsel's obtaining access to these records, or (2) what law requires illegally obtained evidence (if there were any) to be excluded from a civil divorce proceeding.

10

The husband's improper authentication claim is likewise unavailing. The claim focuses on exhibit 157, an Excel workbook maintained by the husband, which he called a "special task file," recording the specific details of his sexual and financial involvement with prostitutes from 2009 to 2014. The wife offered and the judge admitted exhibit 157 based on the husband's testimony that it was the spreadsheet into which he had entered his activities with prostitutes, that the entries in it were the same ones he had referred to at his Federal sentencing proceeding, and that it was the subject of a stipulation at his deposition in this case. The stipulation recited in substance that the husband would assert his privilege against self-incrimination in response to questions asking him to confirm, as to each spreadsheet, that he created it, he was the only person to enter data into it, he had personal knowledge of all of the data, and that the data was accurate. From this stipulation, the judge could draw the inference adverse to the husband that he would have answered each question in the affirmative. See Mass. G. Evid. § 525 (a) & note (2024). The husband further testified that he believed the text contained in the version of exhibit 157 produced at trial had been entered by him.

The husband's testimony and the adverse inferences from the stipulation were sufficient to authenticate exhibit 157. "To

11

satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Mass. G. Evid. § 901 (a) (2024).  The wife offered exhibit 157 as "the spreadsheet that [the husband] entered [his] activities with prostitutes into," and the testimony and inferences amply supported a finding that the spreadsheet was just that.

The husband argued to the judge, and repeats on appeal, that other parts of his testimony called the exhibit's authenticity into question.  He testified that the exhibit was missing information from the period from 2009 to 2011 and was also missing other worksheets concerning his health, his medical issues, and his loans.  He stated that there were "errors and modifications in this worksheet . . . it had been changed or modified or corrupted or whatever over time."  But even if the judge credited this testimony, which he was not required to do, it did not establish that the exhibit was not what the wife claimed it to be:  the spreadsheet into which the husband had entered his activities with prostitutes.  The husband does not argue that the wife claimed it to be a complete record of those activities or that the judge admitted it on that understanding. The husband's authentication argument therefore fails.

4.  Property division.  Finally, the husband argues that the judge's property division failed to properly consider the factors set forth in G. L. c. 208, § 34.  In reviewing a property division, we first "examine the judge's findings to determine whether all relevant factors in § 34 were considered," and then "determine whether the reasons for the judge's conclusions are apparent in his findings and rulings" (quotations omitted).  Adams v. Adams, 459 Mass. 361, 371 (2011).  "The weight to be accorded each of the § 34 factors in a particular case is committed to the judge, who has broad discretion in fashioning a judgment under § 34" (citation and quotation omitted).  Ross v. Ross, 385 Mass. 30, 37 (1982).  We leave the judge's property division undisturbed unless it is "plainly wrong and excessive" (quotation omitted).  Adams, supra.

Here, the judge's rationale discussed the § 34 factors, and carefully considered four different scenarios for an equitable property division.  We conclude that it meets the standards outlined above and, in particular, that the property division is not plainly wrong or excessive.  We proceed to consider the husband's specific claims of error.

a.  Wife's needs.  The husband asserts that the judge "neglected to consider that [the wife] failed and refused to

exercise accessible options to reduce her . . . needs."[5] Specifically, he claims, the judge should have taken into account that the wife could have applied for MassHealth or Medicare benefits in order to reduce the amount of property she would need in the future to pay for her medical care and assisted living facility expenses.  He further claims that during the marriage, as the wife's illness progressed, "the parties developed a plan" that relied primarily on MassHealth and Medicare, rather than marital assets, to deal with her future needs if the husband predeceased her.

At oral argument, however, the husband could cite no evidence that the wife ever agreed to any such plan, and no evidence regarding the level of benefits the wife could expect to obtain from Medicare or MassHealth if and when she qualified for either program.  Although the judge commented at trial that the wife should try to qualify for MassHealth, the husband supplied no evidence of the extent to which MassHealth would actually help meet the wife's financial need.  The husband's claimed plan assumed that the wife might need $250,000 to cover her costs for five years, after which she would be "good to go"

---

[5] The husband's argument also refers to the wife's "liabilities," but he fails to identify what they are.  The wife's financial statement listed no liabilities, and the judge found that she had no debt.

under MassHealth.[6]  Yet the claimed plan was made before the wife actually entered assisted living, which the judge found cost $7,000 per month at the time of trial and would "likely increase in the future."  For these reasons, if no others, we do not fault the judge for declining to reduce the wife's projected needs from the marital estate based on speculation about her future receipt of government benefits.

b.  Husband's contributions.  The husband next argues that the judge's findings failed to recognize the husband's significant role in contributing to the wife's care and treatment and in rearing the children.  We see no basis for this assertion.  The judge's findings 131-139, 147, and 689 addressed in detail the husband's assistance with the wife's medical care.  Similarly, findings 655, 657, 664-667, and 682-685, among others, recognized the husband's contributions to the children's upbringing, both while he was still employed and during his periods of under- and unemployment.

Although the husband claims that the judge "discount[ed] or ignore[d] [the husband's] contribution," he cites nothing specific in the judge's findings or rationale to support this

_____

    [6] The husband testified that the plan involved putting all remaining marital assets into an irrevocable trust, because otherwise it would be "wasted."  The husband apparently viewed any expenditures by the wife in excess of what was needed to cover her assisted living costs as wasteful.

claim.  The same is true of his sweeping claims that the judge "cast aside . . . as irrelevant" the husband's testimony regarding having contributed a total of $500,000 to the marital estate from 2014-2018, and that the judge "failed to consider the [parties'] disparate financial contributions to the marriage prior to this period."  The husband has simply failed to identify with any specificity how the judge erred or abused his discretion in dealing with those topics.

c.  Wife's conduct.  The husband next faults the judge for giving insufficient consideration to the wife's various actions that led to financial losses to the marital estate; in the husband's view, the wife dissipated marital assets.  To whatever extent the wife was more responsible for these losses than the husband, the judge was not required to view them as the result of dissipation or any other inequitable conduct vis-à-vis the husband.  See generally Kittredge v. Kittredge, 441 Mass. 28, 36-41 (2004) (discussing varying concepts of dissipation and treatment of financial losses caused by one spouse).  The husband's claim that the judge failed to weigh the wife's disparate use of marital assets during the pendency of the divorce is belied by the very passage of the judge's decision the husband cites.  The judge reasoned that the wife's expenditures, although exceeding the husband's, differed from his in that hers "were neither frivolous nor in pursuit of

16

illicit or criminal activity" but consisted of her "assisted living expenses and counsel fees."

The husband further challenges the judge's finding that the wife did not act inappropriately in using the husband's power of attorney (POA) in connection with the sale of the marital residence and with certain proceeds of the husband's mother's estate. Even if those two uses of the POA had been improper, however, the husband has not shown how they prejudiced him in the property division.

With respect to the sale of the marital residence, the husband argues that the wife's use of the POA to facilitate the sale, over the husband's objection, led to the home being sold for $700,000 below its appraised value. The short answer to this contention is that the judge found "the home was sold for fair market value by a commissioner[,] eliminating the parties from the process," and the husband has not shown that that finding is clearly erroneous.[7] The judge further found that the net proceeds were deposited in an escrow account, from which

---

[7] The docket suggests the sale was conducted by a court-appointed special master. The husband asserts that there was no evidence the sale price was reasonable, but he has failed to support this assertion with record citations. Nor has he explained why, after walking through the house with a realtor of his choice before a pending offer was accepted, he did not seek to stop the sale by the presumptively disinterested special master. Nor, as the judge found, did he offer any different opinion of the home's value at the next hearing.

court-authorized disbursements were made to the parties during the pendency of the case, and the remainder was included in the equitable division of property. The husband has thus shown no prejudice from the wife's use of the POA preparatory to the sale of the home.

Similarly, that the wife transferred the estate proceeds into a trust in her own name did not place those proceeds beyond the power of the judge to include them in the marital estate and to divide them equitably. The judge found that the trust was created "to protect the funds from further dissipation by [the husband]." He also made detailed findings regarding how the wife used the funds she transferred into the trust, including "to pay the children's school expenses, repairs to the home, overall living expenses and attorney's fees." The husband has not shown that any of these findings are clearly erroneous, that any of the specific expenditures were inappropriate, or that any funds remaining in the trust were not equitably divided by the judge.[8]

d. Other issues. Finally, we comment briefly on the husband's claims that miscellaneous errors and internal

---

[8] The husband's brief identifies additional allegedly improper conduct by the wife that, according to the husband, the judge failed to consider. This argument is unavailing because, among other reasons, the husband fails to identify how such conduct prejudiced him in the property division.

inconsistencies in the judge's findings call into question whether he properly considered the § 34 factors.

There is some internal tension in the findings regarding how the husband's health might affect his future ability to earn income and acquire assets. But the judge plainly recognized that the husband had at least some such ability, whereas the wife had none, and on appeal the husband does not challenge this conclusion.

The husband criticizes certain of the judge's findings as failing to recognize some of the time periods in which the husband held family meetings, and when he assisted with the wife's medical care. Yet the judge recognized those other time periods elsewhere in his findings.

The husband cites minor date discrepancies in the judge's findings regarding the husband's criminal case, yet he fails to explain how the discrepancies were prejudicial. The husband also faults the judge for a finding attributing certain of the wife's business losses to the husband's incarceration, but the husband fails to address the preceding finding, that the husband himself attributed those losses to his arrest.

We need not discuss the husband's remaining assertions regarding erroneous or inconsistent findings. We have

19

considered them and conclude that they are no more meritorious than those we have just addressed.[9]

<u>Judgment affirmed</u>.

By the Court (Milkey, Sacks & Smyth, JJ.[10]),

*Paul Little*

Clerk

Entered:  August 21, 2024.

---

[9] The wife's request that she be awarded her appellate attorney's fees is denied.

[10] The panelists are listed in order of seniority.